Legler *v.* Paine *et al.* Board of Com'rs of Vanderburgh County.

LEGLER *v.* PAINE ET AL. BOARD OF COMMISSIONERS OF VANDERBURGH COUNTY.

[No. 17,845.   Filed Dec. 24, 1896   Rehearing denied Mar. 9, 1897.]

OFFICERS.—*Entitled Only to Fees Allowed by Statute.*—An officer is entitled only to the fees allowed by statute.  *p. 182.*

SAME.—*County Auditor.*—Under section 126 of the act of March 11, 1895 (Acts of 1895, p. 356), providing that the auditor of a county shall be allowed on his salary only an amount equal to that collected by him as fees and turned into the treasury, a county auditor who has paid out for office expenses the fees collected by him is not entitled to any salary.  *p. 184.*

CONSTITUTIONAL LAW.—*Fees and Salaries.—Act of 1891.—Stare Decisis.*—The fee and salary law of 1891 (Acts of 1891, p. 424), is not unconstitutional as being local and special legislation.  *Henderson, Auditor,* v. *State, ex rel.,* 137 Ind. 552; *State, ex rel. McCoy* v. *Krost,* 140 Ind. 41, and *Walsh* v. *State, ex rel.,* 142 Ind. 357, adhered to, and the doctrine of *stare decisis* applied.  *pp. 187–190.*

SAME.—*Fees and Salaries.—Act of 1895.*—The fee and salary law of 1895, providing for salaries for all county officers in full for their services, and that the fees collected by them shall belong to their respective counties, and that certain officers shall receive as salary only an amount equal to the fees turned into the county treasury, is not unconstitutional as being in conflict with section 22, article 4, of the constitution authorizing local and special laws to "be so made as to grade the compensation of officers in proportion to the population and the necessary services required."  *pp. 190–197.*

SAME.—A law will not be declared unconstitutional if the case presented can be rightly decided otherwise.  *p. 196.*

From the Vanderburgh Circuit Court.  *Affirmed.*

*T. R. Marshall, A. Gilchrist, C. A. DeBruler, W. H. H. Miller, F. Winter, J. B. Elam, R. O. Hawkins* and *H. E. Smith,* for appellant.

*W. A. Ketcham,* Attorney-General, and *W. S. Hurst,* for appellee.

147 181
149 151
149 152
149 166

147 181
153 4
†153 77
e153 78

147 181
157 450

147 181
158 152
158 186
158 187
158 206
158 534

147 181
159 170

147 181
o161 573

147 181
163 412

147 181
165 47

147 181
168 576

HOWARD, J.—On the first Monday of December, 1895, the appellant, as auditor of Vanderburgh county, presented for allowance to appellees, then in regular session as the board of commissioners for said county, his claim for services as such auditor, for the three months ending December 1, 1895. The bill was itemized, and showed on its face, as appears from the copy set out in the record, that it was made out and filed for allowance in pursuance of the provisions of the fee and salary law of 1879 (Acts 1879, p. 130, sections 5907, 5909, R. S. 1881), except that the law of 1879, or any other law, so far as we know, did not authorize so much of the claim as asked for an allowance against the county for papers filed by the auditor. Under that law the compensation for such filings, if not due from persons having business in the auditor's office, was to be regarded as covered by the salary of the auditor. It could not be collected from the county. It has always been the law that an officer is entitled only to the fees allowed by statute, and that before any such allowance is made him he must point out the particular statute authorizing the allowance. *Stiffler v. Board, etc.*, 1 Ind. App. 368; *Noble v. Board, etc.*, 101 Ind. 127; *Wood v. Board, etc.*, 125 Ind. 270. The overcharge so made in the bill would not, of course, have prevented the allowance of the balance of the claim, if found due under the act, and had such act been in force.

The board refused to allow the claim, or any part of it. The order of disallowance reads as follows:

"And the board having considered the subject, and being sufficiently advised, now orders that, under the laws of this State, the auditor is entitled only to so much compensation for such quarter as equals the amount of fees he has collected during such quarter, and has turned into the county treasury; and, as

neither such petition nor such claim shows that such auditor has turned over to the county treasurer any fees collected by him, such auditor is not entitled to the amount claimed by him in such statement and petition, and is not entitled to any allowance from this board for his services during such quarter, and the petition and claim of such auditor for such allowance, or for any allowance for his compensation is hereby denied."

After the disallowance of his claim by the board of county commissioners, the auditor filed his complaint in the court below, setting out as a part of such complaint his petition and claim as filed with, and disallowed by the board, together with the action of the board thereon. In the complaint it is further and particularly stated, that the allowance is asked for under the act of 1879, and that the board had refused to make such allowance for the reason that said act had been repealed by the fee and salary law of 1891, and also by that of 1895. (Acts 1891, p. 424; Acts 1895, p. 319.) It is, however, alleged by the auditor, that the acts of 1891 and 1895 are both unconstitutional, for reasons set out in the complaint; and that the act of 1879 has, therefore, never been repealed, but is still in full force. The auditor further shows in his complaint, that, although he is advised that the acts of 1891 and 1895 are void, yet he has complied with the provisions of those acts requiring him to file a report of fees received from persons doing business in his office, but that he has not paid such fees into the county treasury, for the reason that he was compelled to pay the same for office expenses. The prayer is for judgment for the amount claimed, and that the court determine the compensation to which the auditor is entitled for his services as stated in his complaint. To this com-

plaint the court sustained a demurrer for want of sufficient facts.

The provisions of the act of 1895 which the commissioners deemed sufficient to authorize the rejection of the auditor's claim, are found in section 126 of the act, in which it is declared that "If the clerk, auditor, treasurer, sheriff and recorder in their respective counties, have not turned into the county treasury, out of the fees they may have collected, a sufficient sum to equal the total amount of their respective quarterly allowance of salary, then a sum only shall be allowed equalizing [equaling] the sum turned into such treasury by each respective officer actually earned during his term of office." And as the auditor had not paid into the county treasury any of the fees collected by him, the board found that, under the provisions of the act of 1895, he could, of course, be allowed nothing upon his salary.

Many other provisions of the act of 1895, also of the act of 1891, make it manifest that, under the facts shown in the complaint, the auditor could be allowed no part of his quarterly salary under either of these acts.

Section 21 of the act of 1895, and the same section of the act of 1891, provide for salaries for each of the county officers, in the several counties of the State; and, in both sections, the express declaration is made, that "They shall receive no other compensation whatever." Words could hardly be stronger or more explicit. All fees and other emoluments whatsoever are absolutely cut off; and each county officer is confined strictly to the salary provided for him. For all his services and expenses he receives that salary, quarterly, by allowance of his board of county commissioners, and nothing more from any source.

Section 115, of the act of 1895, and section 116 of

the act of 1891, provide that the auditors of the various counties shall tax and charge the fees and amounts provided by law on account of services performed by them. And, further, that "The fees and amounts so taxed shall be designated 'auditor's costs,' but they shall in no sense belong to, or be the property of the auditor, but shall belong to and be the property of the county." The ensuing section in each act carries out the same requirement. Thus is the declaration made in section 21, re-enforced and emphasized: any fees or other emoluments collected by any county officer belong, not to the officer, but to the county. Even if the fees or other allowances should, for the time being, be collected from the county itself, for services which the officer has rendered to the county, still, even in that case, such fees or allowances would not for that reason belong to the officer, but would, like other fees and allowances, be paid by him into the county treasury at the end of the quarter, to increase the fund out of which the officer's quarterly salary should be paid.

Finally, lest any lingering doubt should remain in the mind of the county board when about to pass upon the quarterly allowance of salary to the county officer, it is provided, in section 136, of the act of 1895, and section 135 of the act of 1891, that nothing in the act shall be so construed, in any event, as to allow both fees and salaries. It is true that this section, in the act of 1895, has also the words, "except as otherwise specified;" but it is not anywhere "otherwise specified," save in relation to the treasurer's four per cent. for collection of delinquent taxes, and in relation to the sheriff's fees "in the execution of all processes issued from any other county than that of his residence." The words, therefore, with these two exceptions, add nothing to the section. The intent of the

legislature, as drawn from the whole act and from each of its provisions, must prevail; and this intent, read, as it must be, in the light of the circumstances surrounding the passage of the act, the earnest desire shown to destroy the evils which had grown up under the fee system, plainly is, that the salary named for each officer shall constitute his sole compensation for all services, and that every fee and emolument whatever, and collected from whatsoever source, shall be paid by him into the county treasury at the end of each quarter; and that out of the fund so made up his quarterly salary shall be paid by allowance of the board of county commissioners.

And should any officer so far forget his duty under the law in this respect as to fail to pay over to the county treasurer the amounts collected by him, then, besides forfeiting his salary, it is provided by section 132 of each act, that he shall be liable to criminal prosecution in the name of the State.

Appellant alleges in his complaint that he has made the report required under sections 124 and 125, respectively, of the two acts. It is not enough, however, to have made the report of fees collected. The sections also require of the several officers, that "they shall pay to the county treasurer the amount shown by said report, and take the county treasurer's receipt therefor, which receipt shall be filed in the county auditor's office, and the auditor shall give to the officer a quietus for the amount paid by such officer." This, appellant admits, he did not do. It is no excuse for his failure to observe the law that he needed the money for his own use or for office expenses. It was not his money to use or pay out, but belonged to the county, to be paid over by him to the county treasurer at the end of the quarter, and before he should be entitled to any allowance of salary. It will not do to say that

this is a useless and troublesome proceeding. The law-making power of the State, for reasons which were deemed good and sufficient, declared what should be done, and how it should be done. It is for all men to obey the law as it is written, and particularly for the officials of the State who have taken a solemn oath to do so.

It seems very clear, then, that appellant was not entitled to receive any salary under the provisions of the law of 1895 or of 1891.

His claim, however, and the real theory of his complaint, is, that those acts are invalid, and that he should be paid under provisions of the act of 1879.

If, indeed, the act of 1895, and that of 1891 should both be invalid, then the act of 1879 could not, of course, have been repealed by either of such later, but void acts. The enactment of each would have been a vain ceremony, and would have left the older statute untouched, as the only living and valid fee and salary law; and appellant's claim, so far as well brought under that law, should have been allowed. This would follow from the rule that, when a legislative act is evidently intended to take the place of another act on the same subject, and, in terms, repeals such other act, then, in case the later act is found to be unconstitutional, the repealing section or clause will also go down with the rest of the void act, the legislature not having shown any intention of repealing the older statute except by the substitution of the later one in its place. If, however, the act of 1895, or that of 1891 should be valid and constitutional, then the act of 1879, repealed thereby, would no longer be in existence, and, hence, no fees or salaries could be charged or paid thereunder.

It would seem that this question, at least so far as it relates to the constitutionality of the act of 1891,

should be considered as closed by former decisions of this court.  In *Henderson, Aud.,* v. *State, ex rel.,* 137 Ind. 552, the law was held valid as to sheriffs.  This holding was adhered to in *State, ex rel.,* v. *Krost,* 140 Ind. 41; and the law was there also held valid as to fees which a recorder should charge for recording a mortgage. In *State, ex rel.,* v. *Boice,* 140 Ind. 506, while the law was found defective in certain particulars, yet the rulings in *Henderson, Aud.,* v. *State, ex rel.,* and *State, ex rel.,* v. *Krost,* were adhered to; and it was also expressly held that the act of 1879 had been repealed, as well as that, under the act of 1891, an officer could not receive both fees and salary.  Finally, in *Walsh, Treas.,* v. *State, ex rel.,* 142 Ind. 357, it was held that, by the act approved Feburary 25, 1893 (Acts 1893, section 142), the defects found in the act of 1891 had been cured; and, consequently, that, from and after May 18, 1893, when the amending statute went into effect, the act of 1891 became valid and constitutional in all respects.  If those decisions are to stand, the act of 1879 has been effectually repealed, and was no longer in existence at the time when appellant's services were rendered; and he can, therefore, be allowed no compensation thereunder.

If respect is to be entertained for the decisions of a court, those decisions, unless clearly wrong, must be maintained by the court itself and by all its members, even by those who may have questioned the wisdom of the action first taken.  The doctrine of *stare decisis*— in other words, to stand by the decided cases and not needlessly disturb what has been settled, is one of the most wholesome rules of procedure.  When a question has been deliberately passed upon by the highest tribunal of the state, the people should feel that they may repose securely under the decision.  The stability of property rights and the safety of individ-

ual conduct and obligations, no less than the confidence with which officials may direct and measure their action under the law thus expounded, all demand that, unless for good reason shown, decisions once made should be adhered to.

In *Massachusetts* v. *Western Union Tel. Co.*, 141 U. S. 40, 11 Sup. Ct. 889, a law of the state of Massachusetts for the taxation of telegraph companies was upheld by a divided court. In *Western Union Tel. Co.* v. *Taggart*, 163 U. S. 1, 16 Sup. Ct. 1054, the Indiana statute on the same subject was upheld by the same court without division, the court intimating that the legislature and the courts of this State had enacted and sustained the law in reliance upon the decision in the Massachusetts case.

In *Chambers* v. *Kyle*, 67 Ind. 206, it was contended that the drainage act of March 11, 1867, was unconstitutional. The court said: "If this was an open question, it would deserve the most careful and serious consideration; but numerous ditches have been established and are now maintained under it, and its constitutionality has been thus so frequently recognized that we are bound by the precedents."

In *Edger* v. *Board, etc.*, 70 Ind. 331, the provisions of the fee and salary law of 1879, in relation to the auditor, were construed as giving to that officer $100.00 additional compensation, instead of $225.00 as claimed by him, for each one thousand inhabitants in the county over 20,000; and a like holding was made in the case of *Parker* v. *Board, etc.*, 84 Ind. 340. Notwithstanding those decisions, the question was again presented in *Stout* v. *Board, etc.*, 107 Ind. ·343; but the court said that three regular sessions of the legislature, besides special sessions, had been held since the decision in the Edger case, and, as the legislature had manifested no disposition to modify the law, that body

must be held to have acquiesced in the court's con-struction of the statute; and that, even if the court, as then constituted, were persuaded, as it was not, that the decision in the Edger case had, in any respect, been at fault, such decision would not for such cause be changed, the court believing that a proper case for the application of the rule of *stare decisis* had been pre-sented. A like conclusion was reached by us in the recent case of *Pennsylvania Co.* v. *State*, 142 Ind. 428. See, also, Chap. IV., Cooley's Const. Lim. (4th ed.).

In the case before us, the fee and salary law of 1891 was recognized as valid by the legislature of 1893, in the amendment then made to the act. Yet more, after the General Assembly had thus twice recognized the validity of such reform legislation, and after this court, in *Henderson, Aud.*, v. *State, ex rel., supra; State, ex rel.*, v. *Krost, supra; State, ex rel.*, v. *Boice, supra*, had affirmed its constitutionality, the legislature of 1895 enacted another law based upon the same system, and, indeed, to a large extent, directly copied from the law of 1891. Finally, in *Walsh, Treas.*, v. *State, ex rel., supra*, after three legislatures had thus sanctioned the principle of the act of 1891, and after its constitu-tionality had thus three times been affirmed, this court again explicitly affirmed it, and this time effectually closed the doors against the return of the act of 1879. It would seem, as said in *Stout* v. *Board, etc., supra*, that "a fair case for the application of the doctrine of *stare decisis* is presented."

It is, however, said by counsel that the reasons now urged against the validity of the act of 1891 were not presented or considered in our former decisions. This contention can hardly be admitted, in view of the earn-est and vigorous dissenting opinion in the case of *Henderson, Aud.*, v. *State, ex rel., supra*. As to ques-tions concerning the uniformity of laws, general and

special or local laws, gradation of fees inversely as the population of the several counties, and other questions now pressed upon our attention, and all of which were discussed in the dissenting opinion in that case, it goes without saying that they were not then passed over without careful consideration by the court. What a court has taken up for consideration is not always shown by what it has decided, but frequently also by what it has refused to decide.

The learned counsel for appellant have made plausible argument to show that under our constitution, a proper law for the compensation of county officers should be general, and not local or special. That is what our fathers thought when they framed the constitution, in 1851. But, after thirty years' trial, under constitutional provisions forbidding "local or special laws" regulating compensation of "county and township officers," and "in relation to fees and salaries," the people discovered that, with such provisions, it was impossible to eradicate the abuses that had grown up in connection with the odious fee system; and, in 1881, to cure the evil which the legislature had been powerless to correct, they injected into the fundamental law the provision, that local and special laws might "be so made as to grade the compensation of officers in proportion to the population and the necessary services required."

In the additional brief for appellant, counsel go almost to the logical limit of their argument, by gravely suggesting "that the amendment of 1881 [made to section 22, article 4, of the constitution] did not modify or change the legal effect of that provision,"—except, possibly, that it may have been intended that the fees of officers might be graded, by "the fixing of a different fee for the same service in one county from that prescribed in another."

In this contention counsel reach the climax of absurdity; and we are half inclined to think that they speak in a humorous vein, when, with all apparent earnestness, they inform us that the framers of the amendment of 1881 intended merely to recognize the methods which had become fixed under the old fee and salary system, and to crystallize them into permanent and fundamental law. The fee and salary law of 1879 is seriously set before our eyes as thus confirmed and adopted by the constitution itself, and as displaying in its many sections and paragraphs the perfection of human wisdom in this species of legislation. It is a pity the legislators of 1891, 1893 and 1895 had not known of the true character and purpose of this amendment; it would have saved them much toil of brain and lying awake of nights. Mistaken men! They were of opinion that the constitution, by this amendment, had imposed on them a solemn duty, for ten years neglected by their predecessors, to revise the fee and salary laws of the State, in compliance with the broader and freer method provided in that amendment, and which the changed condition of affairs in the several counties of the State had proved to be so necessary.

But, with all their fertility of invention, counsel have failed to indicate to us how a general law in relation to the compensation of county officers should be framed. Their illustrations of what such a law should be, relate almost exclusively to population of counties, and not to service of officers. But it was not necessary to amend the constitution in order to frame a general salary law, based upon the population of the different counties. Even before the adoption of the constitutional amendment of 1881, it had been held by this court that a law providing for compensation of county auditors according to population was valid.

Legler *v.* Paine *et al.*, Board of Com'rs of Vanderburgh County.

*Hanlon* v. *Board, etc.*, 53 Ind. 123. This case was approved in *State, ex rel.*, v. *Reitz, Aud.*, 62 Ind. 159; and the principle announced in the first case was extended so as to embrace salaries of judges of criminal courts. Undoubtedly the same holding would have been made as to all county officers, had the legislature seen fit to enact a law requiring that all fees should be paid into the county treasury, and that the several officers should be paid salaries in proportion to the poulation of their respective counties. Such a law would have been general, and not local or special, applying, as it would, to all persons of the same general class and situated under the same circumstances; and it would not have needed the amendment in question to authorize the legislature to enact it.

The principle of such a general law, as based upon the relative population of the several counties, would not be essentially different from that upon which our legislative and congressional apportionment laws are based. There, the courts take jurisdiction and determine the question as to whether the legislature has complied with the provisions of the constitution, for the reason that the sexennial enumeration, taken in connection with such apportionment, enables the court, quite as well as the legislature, to know whether the constitution has been complied with. *Parker* v. *State*, 133 Ind. 178, 18 L. R. A. 567; *Denney* v. *State, ex rel.*, 144 Ind. 503, 31 L. R. A. 726. Here also, if the officer's compensation were to be based solely upon population, the court might certainly determine whether the mandate of the constitution had been complied with. The law would be a general one, based upon population, as disclosed by the United States census, or otherwise, and in such case the

amendment to the constitution providing for local or special laws, would not have been necessary.

But the grading of the compensation of officers according to services rendered, or according to both population and services, can evidently be done only by the enactment of a local and special law, or local and special laws. And the discretion of the legislature in relation to the passage of such laws, unless grossly abused, cannot be inquired into, for the sufficient reason, if for no other, that the courts cannot, as in apportionment cases, have any adequate means of knowing whether the legislation, in respect to the services of officers, was in compliance with the requirements of the constitution or not. The services will vary according to local conditions and the varying business of the different counties of which there can be no judicial knowledge. Such laws, as to compensation of officers for services rendered, must therefore be treated as are those relating to the removal of county seats, the formation of circuit or superior court districts and the like local matters, and in accordance with the well established doctrine, that whether a general law was applicable or not is a question for the legislature, and not for the courts. *Gentile* v. *State*, 29 Ind. 409; *Mode* v. *Beasley*, 143 Ind. 306; *Woods* v. *McCay*, 144 Ind. 316. The new power granted by the amendment is, therefore, one that relates particularly to services, no such additional power being needed so far as population is concerned.

But it is said that the sections of the law providing that an officer shall be entitled only to so much of his salary as he has collected in fees, shows that the act is not based, in any degree, upon population, but wholly upon services. This seems plausible; but when closely looked at, the argument will be found fallacious. The fees themselves are dependent,

not only upon services rendered, but also upon extent of population of the county; for the fees must be affected in amount by the number of people requiring official services, no less than by the number of acts of service required by each person.   Hence, while population alone cannot be the sole measure of services required, yet extent of population will always enter into the calculation when the amount of the officer's compensation is to be fixed.   The sections referred to, therefore, come to this:   In any case, even after the salary is determined, taking population and services into account, the legislature, although having exercised its best judgment, must nevertheless remain, in some degree, uncertain, whether the compensation so fixed may not be too great; and, hence, it is provided, in substance, that the salary shall, in no case exceed in amount the fees collected.   This limit of compensation is precisely that which would obtain even under the fee system, where the elements of population and services must likewise measure the compensation.   Here the salary takes the place of fees; but no more reason exists here than there for contending that the compensation in any case, is dependent upon services alone, instead of upon population and services.

The validity of the act of 1893, amending section 93 of the act of 1891, in relation to certain officers of Shelby county, is also again called in question; and it is again contended that this was a case of amending one void statute by another.   We are satisfied, however, that the reasoning of the court in *Walsh, Treas.,* v. *State, ex rel., supra,* and the authorities there cited, have abundantly established the validity of the amendment so made.

Nor is the Walsh case the first or only one in which this court has sanctioned such an amendment.   The

drainage act of March 11, 1867, as originally passed, was probably invalid, because of the omission of certain essential provisions as to the right of eminent domain. Those omissions were supplied by the drainage act of March 9, 1875; and this court, in *Chambers* v. *Kyle, supra,* held that the latter act thus cured the invalidity of the former. The court said: "Now, since the act of March 11th, 1867, and the act of March 9th, 1875, must be construed together, and seeing that the latter act declares that such proposed work must be necessary and conducive to public health, convenience or welfare, or of public benefit or utility—the omission in the former act having thus been supplied—it is too late to hold it to be unconstitutional, even though such a decision might be wise if the act stood alone, and the question was still open."

In addition to the objections made to the act of 1891, and which are common to that act and to the act of 1895, certain criticisms are specially directed against the act of 1895. These are, especially: (1) That the act is made to apply only to officers elected, and to be elected, since the general election of 1890; and (2) that the fees of the auditor's office are inadequate to his proper compensation, as elsewhere fixed in the act. The latter objection, in particular, is one for grave consideration, but its solution is not necessary to the determination of this case; for, as often held, a law will not be declared unconstitutional if the case presented can be rightly decided otherwise. The law of 1891, as amended, was, as we have seen, a valid enactment; and by that law the act of 1879 was repealed. Appellant can, therefore, have no compensation allowed him under the act of 1879; and, as he has not brought himself under the provisions of either the act of 1891 or that of 1895, as we have also seen, it follows that he cannot, under the allegations of his complaint,

recover under any of the acts in question.  It may be said, however, that should it be ascertained that the act of 1895, or any part of it, is invalid, for the reasons urged, or for any other reasons, then the act of 1891 would still be in full force and effect, as the only valid and constitutional fee and salary law.

Judgment affirmed.

### DISSENTING OPINION.

JORDAN, C. J.—I am unable to concur with the holding of the majority of the court, which, in effect, affirms the constitutional validity of that part of the act of 1895, providing for the salaries or compensation of county officers.

I deem it necessary to give the principal reasons in support of the conclusion which I have reached relative to the question which in my judgment is herein involved.  It is evident that each of the sections of this statute, fixing the compensation of the officers in the respective counties, is a local and special provision and cannot be applicable to any other county in the State.  None of these sections are general or of uniform operation throughout the State.  It is undisputed that the salary features of this act which apply to Benton county cannot be applicable to Bartholomew county.  It is not the form, but the effect or operation of a statute which determines its special character.  A general law cannot be enacted by grouping together in the same act a number of special acts.  *Freeholders* v. *Stevenson*, 46 N. J. L. 173.

The constitution of New Jersey provides, "that no private, special or local bill shall be passed unless public notice of the intention to apply therefor, and of the general object thereof, shall have been previously given."  A statute of that state providing for

salaries differing in amounts for each prosecuting attorney in all of the counties of that state, was, in the case last cited, held to be a local act and void, in the absence of the required notice. The court, after considering questions regarding inequalities in the salaries in the case cited, said: "The constitutional amendment was designed to repress such preferences, and to secure uniformity in legislation. The grouping together in a single act of a number of special or local laws does not constitute a general law. This legislation is not general in its operation and effect, and is as clearly within the constitutional prohibition as if eight several acts had been passed, each applying to one of the counties named in the act of March, 1880. It is an evasion of and not in conformity with the requirement of the fundamental law. *Woodruff* v. *Freeholders*, 13 Vroom. 533."

That the salary features of the act of 1895 (being the sections by which the compensation of county officers is fixed), are of such local and special character as to have rendered them all repugnant to section 22, article 4, of our constitution as it existed prior to the amendment of 1881, cannot be denied. *Madison, etc., R. R. Co.* v. *Whiteneck*, 8 Ind. 217; *Cowdin, Aud.* v. *Huff*, 10 Ind. 83; *Fulk* v. *Board, etc.*, 46 Ind. 150.

The question then arises, does the law offend this section, as amended? The provisions of the constitution in question, are as follows, the part in italics being added by the amendment of 1881: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * In relation to fees or salaries; *except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required.*"

The rule asserted by the authorities as a safe one

for the guidance of courts in the interpretation of written laws, is that which requires them to look to the nature and object of the particular powers, duties, and rights prescribed in the light and aids of contemporary history, and to give the words of the statute or constitution, in dispute, such operation and force consistent with the legitimate meaning, as will fairly secure and obtain the end proposed.  The mandate of the constitution that "the General Assembly shall not pass local or special laws.  *  *  *  in relation to fees or salaries," still remains, except as modified by the amendment, and full force and meaning must be given to it.  What is the legitimate meaning that must be placed upon that part of that clause, *"that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required,"* as will secure and obtain the end in view, by its adoption?  The public history which preceded the enactment of the amendment reflects light upon its true interpretation.

Prior to the amendment, the legislature passed an act approved February 21, 1871 (Acts of 1871, p. 25), regulating fees and salaries.  This act, after fixing a level salary applicable to all county clerks, sheriffs, auditors and treasurers throughout the state, sought to grade such salary by allowing respectively to each of these officers additional sums as pay for deputies, such sums to be based upon the population of the county in excess of 10,000.  Other provisions were also made for additional compensation for services required.  This statute in like manner as that of 1895 provided that the fees earned should be turned into the county treasury, as a fund for the payment of salaries.  While this act was general in some respects, it also possessed features of a local or special character. The validity of this law was assailed in this court

upon the ground of its being local and special in char-
acter, and for the further reason that its provision re-
quiring that the fees for the services of the officers be
paid over to the county was invalid. *Wallace* v. *Board*,
*etc.*, 37 Ind. 383; *Fulk* v. *Board., etc., supra.*

In the case first cited the judges of this court, as
then composed, were equally divided upon the ques-
tion, some of them holding that the law was neces-
sarily local or special, and therefore, violated section
22, article 4 of the constitution.

In the appeal of *Fulk* v. *Board, etc., supra,* this court
held the act invalid upon both grounds.

Before the passage of the salary act of 1871, it is of
general knowledge, that a demand existed upon the
part of the people for a reform in the laws awarding
compensation to county officials, as it was manifest
that under the fee system that these officers in many
of the more populous counties, were too highly re-
warded for their services. The act of 1871, *supra,* was
accepted upon the part of the people in general, as
supplying their demand for a reformation in the com-
pensation of county officers. After the salient fea-
tures of this law were condemned by the court as a
violation of the constitution as hereinbefore stated, a
general demand arose for an amendment to that
part of section 22, of article 4, which required, when
considered with section 23, that all laws in relation to
fees or salaries would be general and of uniform oper-
ation throughout the State. The judicial condemna-
tion of the act of 1871 having demonstrated that a
statute of its character seeking to grade the compen-
sation of county officers by similar provisions, could
not be sustained under the constitution as it then ex-
isted; therefore, the General Assembly of 1877, to ob-
viate the constitutional inhibition which would render
invalid such salary acts of the character of the law

of 1871, proposed the amendment in controversy to clause 14 of section 22. This amendment, along with others, was submitted to the electors of the State for their adoption or rejection on the first Monday in April, 1880. (Acts 1879, p. 25.) In the case of the *State* v. *Swift*, 69 Ind. 505, it was held that the act of 1879, submitting the several amendments to the electors for their ratification was defective, for certain stated reasons, and it was held that they were not adopted. The legislature of 1881 re-submitted the amendment in controversy, and it was adopted with others by the voters, in March, 1881. Viewed then in the light of the history and circumstances leading up to the proposal of the amendment, I think that the purpose or object intended to be obtained by this change in the constitution, was that a law in relation to fees or salaries might be so made by the legislature as by its prescribed provisions, the compensation of officers might thereby be graded in proportion to population and the necessary services required and that such a law might as did the one of 1871 embrace general provisions, and also local and special features which would be necessary to grade or adjust the compensation of the officers in proportion to the population and services.

It would seem to be a reasonable conclusion that the clause as amended intended that the law should provide for what may be termed a general or level salary, for each officer, applicable to all such officers, in every county throughout the State. This salary might be fixed so as to sufficiently compensate the officers in the smaller and less populous counties, and then in order to make it fully compensatory as to the officials in the larger and more populous counties, and also applicable in the future to all other counties as their population and the official services therein re-

quired might change, it should be graded by the means of rules, or provisions prescribed or embraced within the statute, such rules or provisions of course to be applicable to population and necessary services. The grading, in other words, to be such that the additional compensation awarded by the law might increase or decrease as the population and services might fluctuate. The plain meaning and intention of the amendatory provision upon any view of the question is, I think, that the law itself is to do the grading, by prescribing such a standard, system, or rules from which the compensation of each officer can, upon the basis prescribed, be ascertained. Of course, it is within the province of the legislature to make choice of the rules or means to be employed by which the required grading may be accomplished. As by what means the population may be ascertained as a basis for such grading, whether by a federal census, or by some census taken under a State law, or by the vote cast at the last general election, is a matter of legislative choice, and likewise, also, the standard fixed for grading as to the required services. The law of 1895 contains no provisions, rules, or standard by which the salaries in question may be graded by its operation. The salary of each officer as therein fixed is purely local and special, having no application whatever to officers in any other county. Each of these ninety-two sections of the act is, in operation and effect, the same as a separate local and special law; each is made to apply only in express terms to a single county. It must be conceded that each of these sections has such fixed provisions, as to render it non-elastic, and in no event and under no circumstances, can its provisions operate beyond the particular geographical subdivision fixed. The salaries provided for the officers of Vigo county, can never apply to those of any other

county, neither can they vary with the changes of population or required services. It must be presumed that the compensation as fixed in each county is to continue for all time, as nothing to the contrary is disclosed.

Surely the exception engrafted upon the fourteenth clause of section 22, was not intended to take the subject-matter, that is, "fees and salaries," entirely out of the prohibition of the section. The exception at most is intended to qualify the inhibition in two particulars only, that is to say, the legislation in relation to fees and salaries must still be general, but the laws "may be so made" as to embrace local or special features, grading the compensation of officers so as to adjust the same to population and services. Certainly it cannot be asserted that the legislature under the amendment is authorized arbitrarily to fix salaries for the officers of a single county, and by its own declaration that they were graded according to population and services thereby put the matter beyond judicial inquiry. There is nothing in the act of 1895 by which it can be made to appear that the salaries therein provided for the county officers are graded in proportion to population and necessary services, except the mere declaration in section 21 that such is the fact. Such legislative *fiat* that a salary law has been enacted in compliance with the constitution no more precludes a judicial investigation as to its constitutional validity, upon that feature, than could one in an apportionment act to the effect that the apportionment therein provided had been made according to the number of male inhabitants over the age of twenty-one years. This, under the decisions in the cases arising under such acts has been held to be a judicial question, consequently a legislative declaration cannot preclude the courts from an examination

relative thereto. *Parker* v. *State*, 133 Ind. 178; *Denney* v. *State, ex rel.*, 144 Ind. 503.

As said in *State, ex rel.*, v. *Boice*, 140 Ind. on page 511, of the opinion: "If the legislative construction of the law and constitution were conclusive, this case would have no place in the courts, and judicial inquiry and interpretation would be denied." As heretofore said, it should be presumed that the salary law of 1895, like all general legislation, is not to be temporary, but is to continue for the future. The compensations therein provided are inflexibly fixed for all time. Population and services may change, but these can exert no influence over salaries as fixed by this law.

Our State is rapidly growing; many of its counties in the past few years have doubled in population and business. It is highly desirable that a law providing for the compensation of our county officers should be passed embodying such provisions that their compensation should be adjusted upon some elastic basis, so that from time to time, as population and services change the law may still, without new legislation, be both just to the public and likewise to the officials. This it is manifest cannot be attained under the act in dispute.

While the act in controversy, by the declaration in section 21, professes to have graded the salaries in question in accordance with the population and necessary services required, it is manifest that under the provisions of section 126 such is not in reality a fact, as the compensation limited by this section has no reference to population, but is based upon, or limited to the fees actually earned by the officers during their term of office. The reasons which are now urged against the validity of this law, by counsel for appellant, as herein stated, were not considered in the case of *Henderson, Aud.*, v. *State, ex rel.*, 137 Ind. 552, nor

Legler *v.* Paine *et al.*, Board of Com'rs of Vanderburgh Couuty.

were they in any other case before the court arising under the act of 1891, hence, the decision in the Henderson case can not be accepted as a determination of all the questions arising in the case at bar, and the rule of *stare decisis*, for this reason, can exert no controlling influence.

Without further extending this opinion, I think it clear, upon the grounds stated, that the salary provisions, relating to county officers, of the law of 1895, are open to the vice of local and special legislation prohibited by sections 22 and 23, article 4, of the State constitution, and that the legislature has not enacted this statute upon the lines required or intended by the amendatory exception to clause 14 of section 22. Therefore, it follows that the provisions in question are repugnant to the above sections of the constitution, and consequently are absolutely void.

### Dissenting Opinion.

McCabe, J.—I concur in the dissenting opinion of Judge Jordan for many of the reasons given by him for holding so much of the fee and salary law of 1895 unconstitutional, as relates to the compensation of county officers.

I concur in the said opinion, especially that the question raised by the particular objection now urged against the part of the act mentioned, was not considered and not decided in *Henderson, Aud.*, v. *State, ex rel.*, 137 Ind. 552. But I do not agree with him in all the reasons assigned by him for holding that part of the act unconstitutional.

All must agree that local or special legislation on the subject of fees or salaries is prohibited by section 22, of article 4, of the constitution, except that such legislation may be made local and special in order to

"grade the compensation of officers in proportion to the population and necessary services required." It is not denied that the part of the act in question is local and special.

Now if it does not grade the compensation of officers in proportion to the population and necessary services required, then it falls clearly under the condemnation of the provision of the section of the constitution mentioned against local legislation. The fees which the act provides for the services of the various officers of the county are to be taxes collected and paid into the county treasury as the property of the county; it then gives to each officer a stated salary to be paid out of such fees. But if the fees collected are insufficient to pay the salary of each officer it provides he is to have no more compensation. Two reasons exist why such a statute does not grade the compensation according to population and necessary services required.

First. This court judicially knows that the population and services required in each county will be constantly on the change, either by increase or decrease, but the act fixes the compensation at one grade, with no possibility of it going up or down with the increase or decrease of population or services required. And when such population and services required do so change, it is obvious that the act will not grade compensation in proportion to population and necessary services required.

If the ordinary and necessarily expected future events will bring a statute in conflict with a constitutional provision, it is undoubtedly unconstitutional in the start.

Second. If the fees collected by a given officer are insufficient to pay the salary provided for him he gets no more salary than the fees collected by him. The act declares that the salary provided is graded in propor-

tion to population and necessary services required. That is, he is to have no more of his stipulated salary than sufficient to equal the amount of fees collected by him. But it may be urged that limiting his salary to the amount of fees earned by him is an accurate and exact method of grading his compensation in proportion to services actually performed. But that leaves out of consideration an indispensable element required by the constitutional provision in question to enter into the gradation of the compensation of such officers, namely, population. Moreover it would be a flat repudiation of the declaration made in the 21st section of the act, that the salaries provided are graded in proportion to population and necessary services required.

Again it is a well known fact that large amounts of fees taxed in the various county offices are not collectable because the parties against whom they are taxed are insolvent, worthless and unable to, and do not pay. This court may take judicial cognizance of that fact. It cannot be said that such fees have not been earned by the officer taxing them. Because they are never collected and never paid into the treasury, and there is not enough of those that have been collected to make the amount of salary fixed by the act, such officers salary is cut down thereby below the amount fixed by the gradation thereof in proportion to population and necessary services required. It cannot be said that such deficiency or decrease arises from or is caused by a decrease in the services required or performed. The services have been performed in such case and not paid for and no provision is made for their payment.

There seems to be absolutely no escape from the conclusion that in that case, compensation is not graded by the act in proportion to population and

necessary services required. For in that case the the salary provided for is not paid, and necessary services required and performed are not paid for at all.

Therefore, the act does not grade compensation according to population and necessary services required; and being local and special, and failing to so grade the compensation, the act as to county officers falls within the inhibition of the constitutional provision against local and special legislation, and does not fall within the exception to that provision, and, therefore, is, in my opinion, unconstitutional and void.