## HARMON v. THE BOARD OF COMMISSIONERS OF MADISON COUNTY.

[No. 18,971. Filed June 16, 1899.]

CONSTITUTIONAL LAW.—*Fees and Salaries.*—*County Officers.*—The fee and salary law of 1891, as amended by the acts of 1893 and 1895, fixing the salaries of county officers in each county of the State, and the fees to be paid for official services, requiring the whole amount of the fees collected to be paid over to the county treasurer, and directing that the salaries of such officers be paid out of any moneys in the county treasury, not otherwise appropriated, with the proviso that the amount paid to any officer shall not exceed the sum turned in by him, is not unconstitutional in that it fails to grade the compensation of officers in proportion to population and necessary services required within the meaning of the provision of §22, article 4 of the Constitution prohibiting local or special laws relative to fees or salaries, "except that laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required." Jordan, C. J., dissenting.

From the Madison Circuit Court. *Affirmed.*

*James McCabe, C. L. Henry, Byron McMahan, J. A. Van Osdol, E. F. McCabe* and *C. M. McCabe,* for appellant.

*William L. Taylor,* Attorney-General, *Merrill Moores* and *M. A. Chipman,* for appellee.

DOWLING, J.—The appellant was the recorder of Madison county from November 19, 1894, to November 19, 1898. Failing to pay over certain fees collected by him and claimed by said county, this action was brought to recover the amount so collected and wrongfully detained. The appellant resisted the claim on the ground that the acts of 1891 and 1895 generally known as the fee and salary acts, were unconstitutional, and that he was entitled to said fees under the act of 1879. The facts constituting this defense were stated in a single paragraph of answer. A demurrer to the answer was sustained, and, the appellant refusing to plead further, judgment was rendered against him. The error assigned is the ruling on the demurrer.

It is contended on behalf of the appellant that the acts of 1891 and 1895 are unconstitutional as to county officers:

"1. Because said acts do not grade the compensation of officers in proportion to population, and the necessary services required, as provided by the Constitution; and,

"2. Because both acts make an unfounded classification of county officers, into those previously elected, as one class, and those afterwards elected as another class, exempting the first class from the operation of said acts, without any reason for such classification."

The sections of the fee and salary acts of 1895 particularly involved in this case, are these:

"Sec. 21. The county officers named herein shall be entitled to receive for their services, the compensation specified in this act, which compensation is graded in proportion to the population and the necessary services required in each of said several counties, subject to the conditions herein prescribed, and they shall receive no other compensation whatever.

\*    \*    \*    \*    \*    \*    \*

"Sec. 69. In the county of Madison the annual salary of the clerk of the circuit court shall be forty-eight hundred dollars, of the auditor forty-eight hundred dollars, of the recorder, thirty-eight hundred dollars, of the treasurer, thirty-eight hundred dollars, and of the sheriff forty-six hundred dollars."

Other provisions of the act fix the amounts of the specific fees to be paid for official services; require the whole amount of the fees collected to be paid over to the county treasurer quarterly, accompanied with an itemized account of the same; and direct that the salaries of such officers be paid out of any moneys in the county treasury, not otherwise appropriated, upon the warrant of the auditor, after orders to that effect made by the board of commissioners, with the proviso that the amount to be paid to any officer on account of his salary shall not exceed the sum turned in by him.

It is expressly declared that the act shall not apply to any county officer elected in 1890, remaining in office, but that all such officers shall receive the compensation prescribed by law, the same as if the act of 1895 had not been passed. Acts 1895, p. 319, §§6426, 6474 Burns Supp. The act of 1891, as amended by the act of 1893, is substantially the same as the act of 1895. Acts 1891, p. 424; Acts 1893, p. 142; §§6405-6541a Burns Supp.

The article of the Constitution supposed to be violated is the following:

"The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say:
*     *     *     *     *     *     *
"In relation to fees or salaries; *except* that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required." Const., Art. 4, §22.

We do not deem it necessary to enter upon an extended discussion of the questions presented on this appeal, for the reason that they have already been the subjects of the earnest and deliberate consideration of the court in other cases. After a careful reëxamination of the grounds of our former decisions, we are satisfied with them, and, notwithstanding the forcible argument of counsel for appellant, we remain of the opinion that the conclusions announced in those decisions are correct.

We think the following propositions have been established by the decision of this court:

(1) There are, under the Constitution of this State, at least three modes of compensating persons engaged in the public service, viz., by fees, by salaries, and by wages. Where the Constitution does not provide otherwise, the State may adopt either of these modes. Where that instrument does prescribe a mode of compensation, that mode must be followed.

(2) It is competent for the legislature to provide for compensating all public officers by salaries. It may create a fund

out of which the salary of any county officer is to be paid, by requiring fees to be taxed against persons demanding official services, and who are specially benefited by their performance.

(3) When the salary of a public officer is to be paid by the county out of a special fund arising from fees paid in on account of official services performed, the fees for such services belong to the county, and must be actually paid over to the county treasurer, or other designated officer, at the times and in the manner prescribed by the statute. Before any salary, or any instalment thereof, can be paid to any county officer, an order for the same must be made by the county board, and a warrant drawn by the auditor; and in no case can the amount so to be allowed and paid to any officer on account of his salary, exceed the amount of fees previously turned into the treasury by him.

(4) The grading of the compensation of county officers, according to population and the necessary services required, can be done only by the enactment of a local and special law, or local and special laws.

(5) The discretion of the legislature in relation to the passage of such laws cannot be inquired into by the courts.

(6) The main object of the acts grading the compensation of county officers was to prevent such compensation from becoming too great, and hence a maximum amount for each officer in each county was established.

(7) An act of the legislature, which applies to all officers elected after it takes effect, and intended so to apply, is of general and uniform operation throughout the State, and operates alike upon all persons under the same circumstances. Such an act is not liable to the imputation of being local or special, or in the nature of class legislation, although officers elected before such act took effect, and remaining in office after it took effect, are not subject to its provisions. An act of this character is the same in legal effect as if it read, "Be it enacted by the General Assembly of the State of Indiana,

that all State and county officers hereafter elected shall here-after receive the following salaries, and no other." The postponement of the operation of the acts of 1891 and 1895 did not render those acts local or special, and did not violate the requirement of the Constitution that they should be uniform in their operation, although the effect of such post-ponement was that officers in various parts of the State were governed, some by the act of 1879, and others by the act of 1891.

(8) When the legislature declares in the act itself that the salaries of the county officers in the several counties of the State are graded according to population and the necessary services required, we must assume that it had before it all the necessary information to enable it to fix such salaries upon a just and equitable basis, with a view of giving to each officer therein named a reasonable compensation for the serv-ices performed. *Cowdin* v. *Huff*, 10 Ind. 83; *Henderson* v. *State*, 137 Ind. 552, 24 L. R. A. 469; *State* v. *Krost*, 140 Ind. 41; *Walsh* v. *State*, 142 Ind. 357, 33 L. R. A. 392; *Legler* v. *Paine*, 147 Ind. 181; *City of Indianapolis* v. *Navin*, 151 Ind. 139, 41 L. R. A. 337.

The evils and abuses under the former systems of compen-sating county officers became so glaring and intolerable that, in 1881, the people of the State amended the Constitution for the purpose of enabling the legislature to correct those evils and prevent those abuses by a new system of payment for official services. The mischief to be remedied was, not that any officer was underpaid, but that illegal fees, and fees for constructive services, were being charged, and that in the larger and more populous counties the amounts received by the officers for their services were excessive.

The acts of 1891 and 1895 were intended to grade the compensation of county officers, in conformity with the man-date of the Constitution, according to population and services required, both considered. The practical difficulties en-countered in attempting to frame a statute of this character

were necessarily great. At the time of the passage of the acts of 1891 and 1895, the legislature had before it, and, we must presume, fully considered, among other circumstances, the following contingencies as to each county, and as to each office: (1) An increase of population; an increase of services. (2) An increase of population; a decrease of services. (3) A decrease of population; an increase of services. (4) A decrease of population; a decrease of services. (5) An increase or decrease of the services of one office in a county, without a corresponding increase or decrease in another office or office in the same county.

It's generally true that the population of a county, and the amount of the services required of its officers, bear a close relation to each other, although this is not always the case. The accumulation of wealth, the nature of the industrial pursuits in which the inhabitants of a county are engaged, the concentration of those inhabitants in towns and cities, or the prosecution of an extensive system of public improvement of any character, probably have the effect of increasing the amount of services required, even where the population remains stationary, or nearly so.

An increase of population and of services in each county might reasonably be expected, such increase of population being governed by natural laws, and therefore falling within the domain of statistical computation; an approximate constancy of its distribution being maintained.

In framing the fee and salary acts of 1891 and 1895, we must believe that the legislature took into consideration the natural movement of population, and the resulting increase of official services, which would occur in each county. It was evidently expected that in some counties the salaries allowed would, at the date of the passage of these acts, exceed the fees collected. It was foreseen that in other counties the fees collected would exceed the salaries. It is but fair to presume that these results were not only contemplated, but were intended, by the legislature. To a candid mind, their ex-

Harmon v. Board, etc.

istence furnishes convincing proof that the requirement of
the Constitution, as to the graduation of the salaries of county
officers has been intelligently and fairly executed. Ranging
as these salaries do, from $700 for the recorder of the county
of Scott, to $12,500 for the recorder of the county of Marion,
such graduation must be supposed to rest upon the basis of a
full and comprehensive survey, embracing both existing pop-
ulations and services, with the probable increase of the one
and the additions to the other which natural growth would
in time produce.

It should be borne in mind that in fixing the amount of the
fees to be paid for the special official services rendered, the
legislature did not thereby establish the *value* of the services
so to be performed. The county officer has no right to say
that his personal services in the office are worth so much, be-
cause the fees of the office, paid to or through him, amount
to a given sum. The designation of the amount of a fee for
the recording of a deed, or the issuing of a writ, is no less an
act of sovereignty than the enactment of a law creating courts
of justice, or levying taxes. The State has the right to ap-
point such reasonable fees to be paid for official services as
it sees fit, without regard to the value of the personal labor
involved in the performance of such services. The market
value of the labor required to record a deed or to perform
any act of official service, measured by the time spent in such
work, or the quality of the labor itself, may be much less
than the fee prescribed for that service. The fees for such
official services must be uniform throughot the State. They
cannot be reduced in amount, because experience has dem-
onstrated that such reduced rate would not yield a sufficient
compensation for the officers in the smaller and less populous
counties. It is to be expected, therefore, that under a sys-
tem which gives a reasonable compensation to all county
officers, varying according to population and the services re-
quired, the fees collected and belonging to those counties

will in some instances exceed the amount of the salaries allowed the officers.

The position is taken by counsel for appellant that as the answer shows a great increase of population and of the services required of the officers in the county of Madison, as well as in certain other counties, after the passage of the acts of 1891 and 1895, the court now has before it a fact which did not appear, and of which in former cases it could not take judicial knowledge, and that this circumstance requires us to hold these acts unconstitutional. We cannot adopt this view. It has been held by a court, whose decisions are entitled to great respect, that no facts except such as are within the judicial knowledge of the court can be considered in determining the constitutionality of a statute not involving a question as to private property. *State* v. *Cunningham,* 81 Wis. 440, 510, 518, 51 N. W. 724.

Without expressing any opinion upon this point, we think the fee and salary acts were so adjusted as to meet exactly such a case as is presented by the answer, and that, by placing a limit of value upon the entire services which could in any event be required of the officers of those counties, the law designedly and justly prohibited them from collecting greater sums as compensation for their services than the amounts of the salaries named in the statutes. The fact that the State, through the agency of these offices, collects more money than is required to pay the officers who are its agents and servants, neither proves the value of their services, nor entitles them to the excess.

The Constitution states the principle by which the legislature is to be guided in the enactment of laws regulating the compensation of county officers, but it does not prescribe the method by which that principle is to be carried into effect. The selection of the proper means is left to the judgment of the legislature. In the discharge of the duty imposed upon it, the legislature did grade the salaries of all county officers upon a basis, and by a rule and standard which it believed

to be in accordance with the command of the Constitution. It is not asserted that there has been a reckless disregard of that requirement, or a disposition to evade it.   When the difficulties and importance of the task, and the general fairness and thoroughness of the acts of 1891 and 1895, are considered, it must be admitted that in enacting these statutes the legislature was earnestly and faithfully attempting to conform their provisions to the Constitution.   In such cases, absolute correctness and relative equality upon the constitutional basis of computation are not attainable.   Approximation, then, becomes the rule; and where an effort has been made, in good faith, and in the exercise of sound judgment, to approach as near to exactness as the nature of the case will permit, the reasonable exercise of the judgment of the legislature, as to the best means of attaining that end cannot be controlled by the courts.   It is only where there is a gross departure and manifest abandonment and defiance of constitutional rules of procedure that the judicial department of the State can set aside and declare void the acts and proceedings of a coördinate branch of the State government.

As is well said in *Parker* v. *State*, 133 Ind. 178, 18 L. R. A. 567, by Coffey, J.: "Courts always approach questions involving the validity of statutes reluctantly, and out of this reluctance have grown two well known rules; *first*, that the court will never decide a question involving the constitutionality of a statute, if the merits of the case in which it is involved can be determined without such decision; and, *second*, the court will never declare a statute unconstitutional where there is any doubt upon the subject.   To doubt the validity of a statute, is to resolve in favor of its constitutionality. *Warren* v. *Britton*, 84 Ind. 14; *Campbell* v. *Dwiggins*, 83 Ind. 473; *Hays* v. *Tippy*, 91 Ind. 102."

If sudden and abnormal changes of population, due to extraordinary forces acting within circumscribed localities, and probably temporary in their duration, have taken place, seriously disturbing the ratio between the compensation al-

lowed the county officers in those localities and the services required of them, the remedy is to be sought from the legislature and not from the courts. A whole system, maturely planned and fairly adjusted, is not to be overthrown because of a supposed lack of harmony in the operation of some of its parts.

In our opinion, the acts of 1891 and 1895 were as well adapted to the exigencies of the future as to the circumstances of the periods when they were enacted. They adjust themselves to the ebb and flow of population and the amount of services required. In the vigorous language of a dissenting opinion in the case of *Legler* v. *Paine,* 147 Ind. 181, "The law itself does the grading."

The views herein expressed are fortified and confirmed, not only by the previous decisions of this court, but by those of the Supreme Court of the United States, and of the appellate courts of many of the other states of the Union. *Parker* v. *State,* 133 Ind. 178; *Denney* v. *State,* 144 Ind. 508, 31 L. R. A. 726; *State* v. *Cunningham,* 81 Wis. 440, 510, 518, 51 N. W. 724; *State* v. *Cunningham,* 83 Wis. 90, 53 N. W. 35; *Harwood* v. *Wentworth,* 162 U. S. 547, 16 Sup. Ct. 890; *Green* v. *County of Fresno,* 95 Cal. 329, 30 Pac. 544; *Pearson* v. *Stephens,* 56 Ohio St. 126, 46 N. E. 511; *Tulare County* v. *May,* 118 Cal. 303, 50 Pac. 427; *Spaulding* v. *Brady,* 128 Mo. 653, 31 S. W. 103; *Anderson* v. *Sullivan* (Minn.), 75 N. W. 8; *State* v. *Kolsem,* 130 Ind. 434, 14 L. R. A. 566; *Henderson* v. *State,* 137 Ind. 552, 24 L. R. A. 469; *State* v. *Krost,* 140 Ind. 41; *Walsh* v. *State,* 142 Ind. 357, 33 L. R. A. 392; *Legler* v. *Paine,* 147 Ind. 181.

We adhere to our former rulings, and hold that the acts of 1891 (as amended in 1893) and 1895 are in conformity with the provisions of the Constitution, that the classification of officers under the same is a proper one, and that these acts are valid.

The judgment of the Madison Circuit Court herein is affirmed.

Jordan, C. J., dissents.

### DISSENTING OPINION.

JORDAN, C. J.—I cannot yield assent to the majority opinion, which sustains the constitutional validity of that part of the salary law of 1895 which professes to fix the compensation of county officers.

The reasons upon which I base my dissent are, in the main, given in my dissenting opinion in the appeal of *Legler* v. *Paine*, 147 Ind. 181. Consequently a repetition thereof is unnecessary. I may say, however, that, after again thoroughly considering the question in respect to the validity of the act involved, I am still confirmed in my opinion that the local and special features of the act, by which the salaries of county officers are fixed, are violative of §22, article 4 of the Constitution, which denies the legislature the power to enact local or special laws in respect to fees or salaries. An examination of the statute in question is sufficient to disclose that it is so framed that it cannot operate by its own provisions to grade the compensation of county officers in proportion to the population and the necessary services required, and therefore is not authorized by the exception engrafted upon §22, *supra*, by the amendment of 1881.

In my dissenting opinion in the Legler case, I took occasion to say: "It is highly desirable that a law providing for the compensation of our county officers should be passed embodying such provisions that their compensation should be adjusted upon some elastic basis, so that from time to time, as population and services change, the law may still, without new legislation, be both just to the public and likewise to the officials."

The necessity for a law of this character, to take the place of the one in controversy, seems to have been recognized by

the last legislature. By an act approved March 3, 1899, (Acts 1899, p. 255) a fee and salary commission was created, to procure facts and information pertaining to the fees and salaries of county officers and other officials. By the preamble to this act, the legislature declared that "great inequality exists throughout the State in salaries paid to county, township and other public officers," etc. The passage of this latter act can have but one meaning, and that is that already, under existing circumstances, a necessity exists for amendments or changes in the salary law of 1895, in relation to the compensation of county officers, or that a new law is to be enacted to take its place.

Had the statute here involved been framed along the lines contemplated by the amendment to the Constitution, and thereby so made that by its own provisions it could operate to grade the salaries of county officers in proportion to the population and necessary services required of them in their respective counties, the great inequality in salaries which now exists under the act of 1895, as recognized by the last General Assembly, would not necessarily have arisen, and that body would not have found it essential to take the steps which it did, looking towards the enactment of another salary statute in the stead of the act in controversy, which has been in force but a brief period.

By amending our Constitution so that a fee and salary law might be made to grade salaries in proportion to population and services required, it certainly was intended that this result should be reached by provisions inserted in the law enacted, by which it might adjust itself to future changes in population and services. It certainly was not intended, by the amendment to the Constitution, that a law of the character of the one in question, which can never adapt itself to the shifting or changes in population and services required to be rendered, should be enacted. Such changes must necessarily occur in the future, and an act like the one in dispute, which, by reason of its inflexible provisions or fea-

tures, cannot meet such changes, must, in order to prevent great inequality in salaries of public officials, be subjected to frequent amendments.