EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY ET AL. *v.* CITY OF TERRE HAUTE.

[No. 19,875. Filed June 2, 1903.]

MUNICIPAL CORPORATIONS.—*Terre Haute Charter.*—*Special Legislation.* —*Constitutional Law.*—The act of 1899 (Acts 1899, p. 270) for the "government of cities having more than twenty-three thousand and less than thirty-five thousand population, according to the last preceding United States Census" is not unconstitutional as being special legislation. *pp. 29, 36.*

SAME.—*Terre Haute Charter.*— *Condemnation Proceedings.*—*Appeal.*— *Eminent Domain.*—The provision of §83 of the act of 1899 (Acts 1899, p. 270) that judgments of the circuit or superior courts on appeal from condemnation proceedings in the opening, changing, or laying out of public streets shall be final, applies to a case in which all of the proceedings were had before such act was in force and which was pending in the circuit court untried when the act went into effect. *pp. 29-36.*

From Parke Circuit Court ; *A. F. White,* Judge.

Appeal by the Evansville & Terre Haute Railroad Company and the Farmers Loan & Trust Company from

a judgment of the circuit court in a proceeding by the city of Terre Haute to condemn and appropriate lands for the opening of a street. *Appeal dismissed.*

*J. E. Iglehart, Edwin Taylor, S. B. Davis, J. E. Lamb, J. T. Beasley, S. D. Puett, J. S. McFaddin* and *F. B. Posey,* for appellants.

*Johnston & White, P. M. Foley, J. G. McNutt* and *F. A. McNutt,* for appellee.

JORDAN, J.—This is an appeal from a judgment of the Parke Circuit Court rendered in favor of appellant railroad company against appellee for damages arising out of a certain proceeding to condemn and appropriate lands for the opening and extension of a street in the city of Terre Haute. Constitutional questions are involved; hence the appeal has been taken direct to this court.

It appears that in the year 1895 proceedings were instituted in the common council of the said city to open and extend Ohio street of said city over lands belonging to the railroad company. The city at that time, and until the first day of July, 1899, was operating under and governed by the general laws of this State pertaining to the organization and government of cities. After the commencement of the proceeding it seems that the usual steps were taken therein in conformity with the statute authorizing the same, and the matter was finally referred to the city commissioners to assess benefits and damages. Said commissioners made their first report to the common council in the matter on January 21, 1896, and in their report named appellant railroad company as a landowner whose lands were to be condemned and appropriated, and also mentioned the names of numerous persons who would be benefited by the extension of the street in controversy. Thereupon notice was given to all concerned that the city commissioners would convene on March 10, 1896, for the purpose of assessing damages and benefits. At this stage in the proceeding it

appears that the railroad company interposed and secured a temporary injunction against the city from taking further action in the matter, from which judgment the city appealed to this court, and its right and power to extend the public street across the lands of the railroad company was in that appeal expressly affirmed, and the judgment of the lower court was reversed. See *City of Terre Haute* v. *Evansville, etc., R. Co.,* 149 Ind. 174. After the reversal of the temporary injunction by this court, the hearing of the matter before the city commissioners was delayed or postponed for various reasons, and their final report was not submitted to the common council until November 1, 1898. This report discloses that the city commissioners awarded to appellant, as damages for the appropriation of lands, $21,500, and benefits were assessed against numerous property owners. The report was accepted by the common council, and it decided to appropriate the real estate of appellant for the improvement in question. From this decision of the common council appellant appealed, under §3180 R. S. 1881, to the Vigo Circuit Court. Subsequently the cause was venued to the Parke Circuit Court, and was docketed therein on January 3, 1899. On November 13, 1901, the trial of the cause was commenced before a jury, and on the 30th day of the latter month the jury returned a verdict in favor of appellant railroad company, assessing damages at $60,-000. On February 3, 1902, over separate motions for a new trial made by appellant and by the Farmers Loan & Trust Company, a codefendant therein, the court rendered judgment in favor of appellant against appellee for the amount awarded by the jury, and that the said Farmers Loan & Trust Company take nothing on its claim for damages. On April 15, 1902, a transcript of the proceedings below, together with the assignment of errors, was filed in the office of the clerk of this court.

At the very threshold we are confronted with a question of jurisdiction by reason of the contention of appellee that

no appeal is permitted from the judgment of the lower court, and counsel for appellee move that the appeal or appeals of appellants be dismissed. This is a question of the highest import, and necessarily must be first decided before we attempt to review any of the questions presented upon their merits; for if the cause is not appealable we have no authority to proceed in the matter, but must dismiss the appeal.

Appellee's counsel insist that by virtue of the provisions of §83 of appellee's new charter, which went into full force and effect prior to the trial of this action in the lower court, the right of appeal is denied. Counsel for appellant, in opposing this contention, argue that inasmuch as this proceeding was originally instituted under the general statutes of the State pertaining to the organization and government of cities, and prior to the enactment of the new charter in question, an appeal from the judgment of the circuit court in a condemnation proceeding like the one at bar might be taken to the Supreme Court under §644 Burns 1901, §632 Horner 1901, being §628 of the civil code: Therefore it is insisted that the provisions of §83 of the act in controversy must be held to apply alone to cases commenced after the taking effect of that statute, and can not be held to deal with or control the right of appeal in the case at bar. Section 644, supra, provides: "Appeals may be taken from the circuit courts and superior courts to the Supreme Court, by either party, from all final judgments," etc.

The further argument is advanced by appellants' counsel that the charter act of 1899 is special legislation, and therefore "unconstitutional and void." It is conceded, however, that this court has held similar acts of the legislature valid, although they were expressly intended to apply to a single city, upon the grounds that such laws could, under their terms, be said to be general and not special. The question of the right of appeal herein involved requires an examination of several sections of the act in controversy, which was

approved March 3, 1899, and is entitled "An act concerning the incorporation and government of cities having more than 23,000 and less than 35,000 population, according to the last preceding United States census," etc. Acts 1899, p. 270. This act contains an emergency clause, but under its express terms was not to become operative until July 1, 1899. It is recognized and known as the charter or governing law of the city of Terre Haute. *Heinl* v. *City of Terre Haute, post,* 44. By the first section thereof it is provided: "Any city falling within the scope of this act shall be, and continue to be the same legal corporation as heretofore, subject to the same liabilities heretofore incurred, and possessing the same rights which have heretofore accrued. All by-laws, ordinances and regulations not inconsistent with this act shall remain and continue in force until altered or repealed by the common council in conformity with the provisions of this act, but all by-laws, ordinances and regulations inconsistent with this act are hereby abolished on and after the taking effect of this act." Section 3 of the act declares that "On and after the 1st day of July, 1899, the common council, mayor, city clerk and all other city officers and employes shall possess the powers conferred by this act, and no others. * * * Provided, however, * * * in case such city, prior to the taking effect of this act. shall have commenced, by its proper officer, any proceedings or undertaking of a public nature, which was lawfully commenced or undertaken, the same shall not be interrupted by the passage of this act, but it shall be taken up and carried forward by the proper officer or department as prescribed by this act." Section 71 provides that the city attorney shall be the head of the department of law, and defines his duties, among which it declares that "He shall conduct all legal proceedings authorized by this act, and all appeals of every nature whatsoever in which said city or the public shall have an interest." Section 148 declares that "All laws and parts of laws in conflict with any of the provisions

of this act are hereby repealed on and after the 1st day of July, 1899, in so far as they relate to cities of the class referred to in this act and are in conflict with its provisions."

In the appeal of *Heinl* v. *City of Terre Haute, supra,* the provisions of this same statute were to an extent involved. In that case, in respect to the operation and effect of the act, this court said: "Upon the taking effect of the act of 1899, the proceedings then, under the circumstances, fell within the provisions of §3 of this act, and the city was expressly authorized thereby through its proper officers, if it desired, to take up and carry them forward from the stage or point to which they had already been advanced under former laws before the latter act became operative."

Under the provisions of this statute a board of public works is created, and the latter, instead of the common council, is given jurisdiction in condemnation proceedings of property in the opening, changing, or laying out of public streets. And by §78, together with those following, and including §87, ample provisions are made for a hearing before such board on the part of owners of the property sought to be appropriated, and for the assessment of damages and benefits. By §82 an appeal from the decision of the board of public works to the circuit or superior court in such matters is granted to an aggrieved remonstrator.

Section 83 declares that: "Such court shall rehear the matter of such assessment *de novo,* and confirm, lower or increase the same as may seem just. In case such court shall reduce the amount of benefits assessed against the land of such property holders, or increase the amount of damages awarded in his favor to the extent of ten *per centum* of such benefits or damages, the plaintiff in such suit shall recover costs, otherwise not. The judgment of such court shall be final, and no appeal shall lie therefrom: Provided, if upon such appeal the report of the board of public works as to benefits or damages be greatly diminished or increased,

the city may, upon the payment of costs, discontinue such proceedings."

In the case of *Heinl* v. *City of Terre Haute, supra,* the point was raised as to the right of appellant to prosecute an appeal from the judgment of the Parke Circuit Court awarding the damages herein involved. By reason of the fact that we did not deem the proposition as advanced in that appeal of vital importance, and for the further reason that the argument in support thereof was limited, we did not go into any extensive consideration or review of the question, but said: "By the provisions of the act of 1899, the judgment in the proceedings in question was declared to be final, and an appeal therefrom expressly denied. In the absence of anything to the contrary, we must regard this provision of the statute as cutting off all right of appeal from the judgment in question to a higher court."

After a more mature consideration of the question and the authorities pertaining thereto, we are confirmed that what was asserted in the Heinl case in regard to the appeal is correct. Section 83 of the act in question neither attempts nor professes to cut off any right of appeal which had attached prior to the taking effect of the statute of which it forms a part. It will be observed from the facts herein stated that the proceedings to condemn the lands of appellant for the use of the public street in question had been commenced by the proper authorities of the city prior to the taking effect of the charter act of 1899, and had been advanced through the various stages under previously governing laws, until an appeal on the part of appellant from the decision of the common council appropriating the land, had been lodged in the Vigo Circuit Court, from which the cause was venued to the Parke Circuit Court; and on July 1, 1899, the time when the statute went into full force and effect, the matter was pending in the latter court untried and undetermined. No judgment of the lower court from which an appeal to this court could have been taken

had been rendered at that date, and none was rendered until February 3, 1902, two years and over after the statute of 1899 became operative and controlling. It is evident, therefore, that when the latter act took effect the proceeding came fully within the provisions of §3 thereof and by its express declarations the matter was not to be interrupted or abated by the passage of the statute, but on the contrary, was to be taken up and carried forward by the proper authorities of the city as prescribed by said act, and under the circumstances the matter must be dealt with and considered as though the proceeding in the first instance had been commenced under the act of 1899. It can not be successfully controverted, under the facts, that when the latter statute went into force appellant had no grounds upon which to base any right whatever of an appeal to this court, for such right could not in any manner attach under §644 Burns 1901, until a final judgment in the lower court had been rendered. The particular stage reached by the proceedings in this case before the act of 1899 took effect can, in view of its provisions, exert no controlling influence over appellants' right of appeal. We may suppose that, in addition to the case at bar, another proceeding for the appropriation of lands for a public street had been instituted by the city prior to the taking effect of the charter act in question, and had been advanced before that law became operative, to a point or stage where it was ready to be referred by the common council to the city commissioners for their action; then certainly, under the circumstances, by virtue of the provisions of §3, *supra*, further jurisdiction therein would have been transferred to the board of public works created by the new charter, and the latter tribunal, instead of the common council, would have been, by the express terms of the law, authorized to carry the same foward as therein prescribed. An appeal in that case might have been taken by an aggrieved property owner from the decision of the

board of public works to either the circuit or superior court, as authorized by §§82, 83 of the act in controversy. But by virtue of the latter section an appeal from the judgment of the circuit or superior court, as the case might be, would certainly be denied. But if we sanction the contention of counsel for appellant, a discrimination under the circumstances in the two proceedings must be recognized, and we must hold that appellants' right of appeal to this court under the code remains untouched and unaffected by §83, *supra*, for the reason that its case had been further advanced, at the time the charter act of 1899 took effect, than the case supposed. Surely it can not in reason be asserted that the legislature, by the declaration in §83, intended thereby only to cut off appeals in cases like the one supposed, and not, under the circumstances, to deny appeals in cases like the one at bar, because the latter was pending, when the law went into effect, in the circuit court. Such an interpretation of the statute would lead to an absurdity, and this we can not impute to the legislative department. It would seem that the language of §83, declaring that "The judgment of such court shall be final, and no appeal shall lie therefrom," is so clear and positive in respect to what the legislature intended, that it is not subject to judicial construction.

Sutherland, in his work on statutory construction, §482, says: "Where a new statute deals with procedure only, *prima facie* it applies to all actions—those which have accrued or are pending, and future actions. If before final decision a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings: But the steps already taken, the status of the case as to the court in which it was commenced, the pleadings put in, and all things done under the late law, will stand, unless an intention to the contrary is plainly manifested; and pending cases are only affected by general words

as to future proceedings from the point reached when the new law intervened."

In 2 Cyc. Law & Proc., 520, the authors say: "Except where it is provided that a statute which gives, takes away, or modifies the remedy by appeal shall not apply to actions which are pending, the statute applies to cases commenced before, but in which judgment is not rendered until after, it goes into effect." See, also, Wade, Retroactive Laws, §218. In fact it appears that the great weight of authority is that a statute regulating or modifying procedure in actions operates retrospectively so far as to control proceedings in cases pending at the time the act took effect.

In the appeal of *Lake Erie, etc., R. Co.* v. *Watkins,* 157 Ind. 600, the judgment of the lower court from which it was sought to appeal had been rendered, and a term-time appeal prayed, but not perfected, before the statute denying appeals in such cases had taken effect. The contention of appellant in that case was that the act in question was prospective and not retroactive, and inasmuch as the judgment below had been rendered and a term-time appeal prayed and granted prior to the passage of the statute cutting off the right of appeal, that it did not apply to the appeal in that case. This contention the court denied and dismissed the appeal. Under the facts in that case there certainly was more reason for insisting that the right of appeal therein, under the provisions of the civil code, was, under the circumstances, not intended to be cut off by the statute of 1901, than can possibly be advanced in this appeal, where as it is shown the case had not even been tried and determined when the act of 1899 went into full force and effect.

In determining the right of appeal in this case it must be remembered that as a general rule there is no vested right in a remedy; or, in other words, no person can claim a vested right in a particular mode of procedure for the enforcement or defense of his rights. The right of appeal

is not a natural or inherent one. It does not exist at common law, and in this State it is conferred wholly by statute, and, when once conferred, it may subsequently be withdrawn by the legislature, unless in so doing some provision of the organic law of the State is violated. *Lake Erie, etc., R. Co.* v. *Watkins,* 157 Ind. 600, and cases there cited; *Andrews* v. *Swartz,* 156 U. S. 272, 15 Sup. Ct. 389, 39 L. Ed. 422; *National Exchange Bank* v. *Peters,* 144 U. S. 570, 12 Sup. Ct. 767, 36 L. Ed. 545; *Croveno* v. *Atlantic Ave. R. Co.,* 150 N. Y. 225, 44 N. E. 968.

The charter act of 1899 is not unconstitutional upon the grounds urged by counsel for appellant. *Campbell* v. *City of Indianapolis,* 155 Ind. 186, and cases cited.

It follows that that the appeals in question can not be entertained, as they are forbidden by the statute, and therefore must be dismissed at the cost of appellants. Appeals dismissed.