CROWE *v.* BOARD OF COMMISSIONERS OF ST. JOSEPH
COUNTY ET AL.
[No. 26,483.  Filed July 3, 1936.]

*Lewis W. Hammond, Walter R. Arnold* and *Herbert J. Patrick,* for appellant.

*William J. Reed* and *William E. Voor,* for appellees.

FANSLER, J.—Appellant alleges in his complaint that he was auditor of St. Joseph county during the years 1930, 1931, and 1932; that he was paid a salary for those years upon the basis of $10,000 a year; that he was entitled to be paid at the rate of $15,000 per annum from April 1, 1930, by virtue of section 7839, Burns' Ann. St. 1926; that the county is indebted to him for the unpaid balance; that he filed his claim with the board of county commissioners for the allowance of the amount due; that the claim was allowed and ordered paid when funds are available; that there are no funds available; that the county council has refused to appropriate funds with which to pay his claim unless and until a judgment is obtained therefor.

Appellees demurred, assigning a deficiency of facts because: (a) There was no allegation that an appropriation had been made; (b) that the salary is governed by the *"Status Quo"* Law of 1929, which had the effect of preventing an increase in salary because of the increased population of the county shown by the census

of 1930; (c) that appellant's salary could not be increased during his term of office; (d) that under the facts alleged plaintiff is estopped from claiming the additional salary; and (e) that there is no showing that the estimates of county expenses filed and published by the auditor included sums sufficient to pay the additional salary. The demurrer was sustained, and appellant refused to plead further. He assigns the ruling upon the demurrer as error.

Appellees assign cross-error upon the action of the court in overruling their demurrer questioning the jurisdiction of the court, upon the ground that section 5975, Burns 1926 prohibits the bringing of an action upon a claim that has been allowed by the board of county commissioners. Appellees' position is that the board of county commissioners is a court having exclusive original jurisdiction of claims against the county; that where a claim against the county is involved only the aggrieved party can appeal from the decision of the board, and, since the claim was allowed, appellant was not aggrieved by the action of the board. They rely upon the provision of the statute that: "If a claim be disallowed, in whole or in part, . . . the claimant may appeal, or, at his option, bring an action against the county. . . ." It will be noted, however, that the bringing of an action upon a claim that has been allowed is not expressly prohibited. The act referred to was passed in 1885, before the passage of the County Reform Act, and, under the statutes in force at that time, payment would naturally follow the allowance of a claim by the county commissioners. Under the present statutes, payment cannot be made until funds are provided by the county council. It was the purpose of the statute to require claims against the county of every character to be first presented for allowance and payment so that unnecessary actions against the county might be avoided. Since

it is required that one having a claim against the county must first file it for allowance by the board of county commissioners, valid claims might be defeated by an allowance by the commissioners and a refusal to appropriate by the county council, if appellees are correct in their contention that no action may be maintained upon a claim that has been allowed by the commissioners. Such cannot have been the purpose of the law, and a construction of the statute which would leave opportunity for such manifest injustice cannot be countenanced. *Ramsey et al.* v. *Ketcham* (1920), 73 Ind. App. 200, 127 N. E. 204.

In passing upon claims against the county, the board of commissioners does not act judicially or as a court. It acts as an auditing board, and its allowance or disallowance of a claim is only prima facie evidence of its correctness. *Sudbury* v. *Board of Com'rs of Monroe County* (1901), 157 Ind. 446, 62 N. E. 45; *Board of Com'rs of Huntington County* v. *Heaston* (1896), 144 Ind. 583, 41 N. E. 457. In the first case cited the county commissioners had allowed, and the county had paid, salary to the county treasurer in excess of the amounts to which he was entitled under the statute. An action was brought in the circuit court to recover the excess salary, and a judgment for the county was affirmed. It was there said (p. 453) : "A claimant, who has failed before the board of commissioners, and brings his action in the circuit court for the same matters, cannot be defeated by setting up against him the conclusion of the commissioners, call it what you may, and if he cannot be bound by the action of the board, surely the county, the other party to the controversy, cannot be. The effect of an adjudication must be mutual. 'Both litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either.' " If the allowance of a claim by the board of commissioners does not conclude the

county and require payment, it cannot conclude the claimant and bar his right to recovery. The court had jurisdiction of appellant's action.

Appellees expressly concede that an appropriation by the county council was not necessary before the action could be maintained.

There is no merit in the contention that an increase in the salary of an officer during his term is involved. The salary was fixed before he was elected. The amount he was to receive from time to time was made to depend upon the population of the county. It is as though the statute in existence when the officer was elected had provided that he should receive $1,000 the first year and $2,000 the second year of his term. In the statute under consideration the legislature chose to make the amount of salary dependent upon population shown by the United States census. It might continue during the latter part of the term the same as before the census. It might be more if the population increased. It might be less if it decreased. The case of *Sallwasser* v. *City of Laporte* (1933), 205 Ind. 248, 186 N. E. 297, cited by appellees as sustaining their view, is not in point. No such question was presented or considered in that case.

Appellees concede that "practically all of the decisions in Indiana are to the effect that an officer is not estopped from claiming his statutory salary by the acceptance of a lesser sum or by failing to include the amount claimed with the estimate submitted." See *City of Rushville* v. *Thomas* (1929), 88 Ind. App. 665, 165 N. E. 341, and cases there cited. No contrary authority is cited, and no argument advanced, that is not answered by the cases referred to.

The remaining questions involve a consideration of the salary statutes and constitutional provisions.

Section 7838, Burns 1926, provides that the salary of each county auditor, in counties having a population of not less than 90,000 and not more than 150,000 inhabitants, according to the last preceding United States census, shall be $10,000 per year. St. Joseph county was in this class according to the census of 1920. Section 7839, Burns 1926, provides that in counties having a population of not less than 125,000 and not more than 200,000 inhabitants, as shown by the last preceding United States census, whose total assessed valuation is not less than $110,000,000 nor more than $600,000,000, the salary of the county auditor shall be $15,000 per year. St. Joseph county came within this class, as shown by the United States census of 1930, and by the official assessed property valuation for that and the succeeding years under consideration. It is conceded that these statutes are constitutional. Under the latter statute appellant was entitled to receive salary at the rate of $15,000 per annum from April 1, 1930, until the end of his term, unless his right was affected by chapter 81, Acts 1929, p. 275, commonly known as the Status Quo Law, sections 1 and 2 of which read as follows:

"Section 1. Whenever by any law of this state any municipal corporation is classified on the basis of population, as shown by the United States census, or on the basis of the assessed valuation of the taxable property located therein, the classification of such municipal corporation shall not be changed by reason of any increase or decrease in the population thereof, as disclosed by the United States census of 1930, nor by any increase or decrease in the assessed valuation of the taxable property located within such municipal corporation, as disclosed by any future assessment of property for purposes of taxation, but such municipal corporation shall continue to operate under the laws applicable to such municipal corporation at the time of the passage of this

act, and as such municipal corporation would have done if there had been no increase or decrease in the population or the assessed valuation of such municipal corporation, as shown by such census of population or assessment of property, and such municipal corporation shall so continue to operate until the laws or any of the laws applicable to such municipal corporation shall have been specifically amended by the general assembly.

"Section 2. The term 'municipal corporation' as used in this act shall be construed to mean and include counties, civil townships, civil cities, civil towns, school townships, school cities, school towns, or any other territorial subdivision of the state recognized or designated in any existing law."

It is said by appellees that the effect and purpose of this statute is to suspend section 7839, *supra,* insofar as it applies to counties entering into a higher or lower group by reason of the census of 1930.

Section 22 of article 4 of the Constitution of Indiana provides: "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: . . . 14. In relation to fees or salaries: except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required. (As amended March 14, 1881.)"

It is clear that under this section officers holding the same office in different counties need not be paid the same compensation, but that differences and inequalities in salary must be in *proportion* to the population and necessary services required. The legislature may not arbitrarily fix different salaries in different counties where the population and necessary services required are the same. The salary of the officer in each county must be proportionate to that of the same officer in each other county when considered from the standpoint

of the relative population and the necessary services required in each of the counties. It follows that in communities where the population is larger and more services are required, larger salaries may be paid, and that if two or more counties have the same population and will necessarily require the same services from an officer, they must be treated alike. Exactitude is, of course, not required, but approximate equality in grading compensation upon the basis of population and necessary services was clearly intended. In *Harmon* v. *Board of Com'rs of Madison County* (1899), 153 Ind. 68, 71, 54 N. E. 105, this court said that it had been established by its decisions that "the grading of the compensation of county officers, according to population and the necessary services required, can be done only by the enactment of a local and special law, or local and special laws." See, also, *Legler* v. *Paine et al.* (1896), 147 Ind. 181, 45 N. E. 604. It would seem of little importance whether a fee and salary law is called general or local or special, since, regardless of what may have been the legislative power to enact general laws prior to 1881, the amendment of that year must be construed as not only permitting the laws to be so made as to grade the compensation of officers in proportion to the population and necessary services required, but also as prohibiting grading upon any other basis, and therefore as also prohibiting the fixing of different salaries for the same office in different counties, except the difference be in proportion to the difference in population and necessary services. Thus, where a salary for a given office is fixed for one county, consideration must be given the salary paid for the same office in all of the other counties. If salaries are fixed high in small counties where small services are required, and low in large counties where large services are required, the purpose of the Constitution is defeated, and, consequently, such laws cannot

stand. The entire body of the law which fixes the salary for any given office may be considered in determining the validity of a local or special law fixing the salary in one or more counties, and, while a law fixing salaries in all counties may be considered general in one sense, it must be considered local and special insofar as it affects differently the office in each county. In *Harmon* v. *Board of Com'rs of Madison County, supra,* it was said, in answer to an objection that a statute did not grade salaries as required by the Constitution, that (p. 72): "When the legislature declares in the act itself that the salaries of the county officers in the several counties of the State are graded according to population and the necessary services required, we must assume that it had before it all the necessary information to enable it to fix such salaries upon a just and equitable basis, with a view of giving to each officer therein named a reasonable compensation for the services performed." The court was divided upon the question, however. The statute therein questioned did not set out the basis for the determination of the services required or the population of the several counties. It named each county and fixed the salary therein. But the rule quoted was not intended to apply in cases where it is made to affirmatively appear that the salaries were not graded according to population and necessary services required. It was said in *Legler* v. *Paine et al., supra* (p. 194): "But the grading of the compensation of officers according to services rendered, or according to both population and services, can evidently be done only by the enactment of a local and special law, or local and special laws. And the discretion of the legislature in relation to the passage of such laws, unless grossly abused, cannot be inquired into, for the sufficient reason, if for no other, that the courts cannot, as in apportionment cases, have any adequate means of knowing whether the legisla-

tion, in respect to the services of officers, was in compliance with the requirements of the constitution or not. The services will vary according to local conditions and · the varying business of the different counties of which there can be no judicial knowledge. Such laws, as to compensation of officers for services rendered, must therefore be treated as are those relating to the removal of county seats, the formation of circuit or superior court districts and the like local matters, and in accordance with the well established doctrine, that whether a general law was applicable or not is a question for the legislature, and not for the courts. *Gentile* v. *State,* 29 Ind. 409; *Mode* v. *Beasley,* 143 Ind. 306; *Woods* v. *McCay,* 144 Ind. 316. The new power granted by the amendments is, therefore, one that relates particularly to services, no such additional power being needed so far as population is concerned." It will be noted that it is said that the discretion of the legislature in relation to the passage of laws cannot be inquired into *unless grossly abused.* The case of *Gentile* v. *State* and other cases cited in the quotation were expressly overruled in *Heckler* v. *Conter et al.* (1933), 206 Ind. 376, 187 N. E. 878, in which this court said that, in construing legislation, every reasonable presumption must be indulged in favor of its constitutionality, but that if it is clear that a general law can be made applicable, a local or special law cannot be upheld, notwithstanding the seeming legislative determination to the contrary. We must interpret the words "unless grossly abused," in the quotation, as meaning that a statute purporting to grade salaries according to population and necessary services required, will not be held invalid by this court *unless it clearly appears* that the salaries were not fixed on that basis. As has been suggested, the statute under consideration in the case quoted from named each county and fixed the salary of the officer therein, and there was

nothing in the statute to indicate what facts had been taken into consideration in determining the amount of services that would be required in each county. Of the population the court would, of course, take judicial notice. In the dissenting opinion it is urged that populations change, and that, since the statute makes no provision for adjustments to changed conditions, it is unconstitutional. The majority evidently assumed that, in the absence of anything appearing to the contrary, there might be other factors which would overcome changes in population which might maintain the salaries as approximately proportionate notwithstanding population changes. But in section 7839 (which we must assume fixes salaries for the class of counties therein defined, proportionate to the salaries provided for in other statutes for the other counties, since there is no suggestion to the contrary) no counties are named, and the counties in which the auditor is to be paid the salary provided are left to be determined by the population and the amount of assessed property valuation. It is obvious therefor that the legislature could have had in mind no other considerations in determining the amount of salary, or in determining the county or counties to which the salary would apply. That population and assessed property valuation have a direct relationship to the services which may necessarily be required of an auditor cannot be doubted, nor can we say that they are not of themselves a sufficient basis for a legislative determination of the amount of services that will be required. In order that the statute as originally passed may be treated as constitutional, we must assume that the services required of the auditors in the several counties coming within the class defined were considered by the legislature as having such similarity, and as being so nearly equal, as to justify the same salary for all, and the validity of this assumption is not questioned. Since popu-

lation and assessed property valuation were the only basis upon which the legislature determined the necessary services which would be required, and hence the salary, and since no county is named, but the selection of the counties in which the salary fixed is to be paid was left to be determined entirely by population and assessed property valuation, and since by including only the ones conforming to the population and assessed property valuation requirements of the statute, and excluding all others above and below, in which a different salary was provided, the legislature necessarily determined that such other counties above and below were not upon a parity with the counties within the group in respect to necessary services required, and that a lawful fixing of salaries in the proportion required by the Constitution required other and different salaries in such other counties, it necessarily follows that when any of the counties coming within the group by reason of their population and assessed property valuation at the time the statute was passed should automatically, by reason of population or assessed property valuation, acquire a status that would put them on a parity with other counties, where the necessary service required is materially different, then, upon the basis upon which the legislature determined the amount of necessary services which would be required, a continuation of the salary provided for in the group, to which the county was originally relegated, would be disproportionate.

It is settled in this state, as it is in practically all jurisdictions, that, for the purpose of legislating upon subjects concerning which the Constitution requires that laws shall be general, municipalities may be classified according to population if the statute is so framed that all municipalities may come within the classification on acquiring the necessary population, and that a classification by population is invalid if it is con-

fined in its operation to a state of facts existing at the date of the enactment of the law, or any other particular time, thus excluding municipalities from coming within, or from being taken without, its provisions, as their population may be changed; but that a statute which classifies municipalities by population "according to the last United States census," permits a readjustment of the class at each succeeding census, and is therefore general in character and constitutional. *City of Indianapolis* v. *Navin* (1897), 151 Ind. 139, 51 N. E. 80; *Campbell et al.* v. *City of Indianapolis et al.* (1900), 155 Ind. 186, 57 N. E. 920; *Board of Com'rs of County of Owen et al.* v. *Spangler et al.* (1902), 159 Ind. 575, 65 N. E. 743; *Evansville, etc., R. Co. et al.* v. *City of Terre Haute* (1903), 161 Ind. 26, 67 N. E. 686. For cases from other jurisdictions, see note in 15 Am. & Eng. Ann. Cas. 856.

The requirement that such statutes in order to be considered general must operate upon all who meet the classification requirements is no stronger than the requirement that salaries if graded may differ only in proportion to the population and necessary services to be required, and the reasoning upon which the well-settled rule that a law is not general in its operation unless provision is made for all counties which from time to time meet its classification requirements to come within its terms is based, applies with equal force to those statutes which grade or group together or classify municipalities for salary fixing purposes upon the basis of population and assessed property valuation, unless it can be assumed that there was a determination that other factors, would make the services required equal notwithstanding changes in population and property valuation. There can be no such assumption where the sole basis of classification is population and property valuation. An appreciation of this fact doubtless

prompted the insertion of a provision in the statute by which its terms were made to apply to all counties, and to only such counties as were shown to have the population requirements by the last preceding United States census, which has been construed by this court to mean by each succeeding United States census. The statute must also be interpreted to mean that the counties must continue to have an assessed property valuation within the limitations prescribed by the statute to continue within its terms.

The Act of 1929 refers to municipal corporations which have been classified upon the basis of population and assessed valuation. Whether considered general or local or special, the salary statute is a classification statute in that it groups or grades the counties within the population and assessed valuation limits prescribed, and treats them as equal in respect to the services which will be necessarily required of auditors. As pointed out above, the fact that counties are automatically brought within the operation of the act by coming within the requirements, precludes the possibility that any other facts influencing the amount of necessary services to be required were considered by the legislature, and that population and assessed property valuation were the sole basis of their determination that such counties were on a parity in respect to the services that would be required of an auditor. It must also be conclusively presumed that there was a determination that, when viewed from the standpoint of population and assessed property valuation alone, the necessary services to be required of auditors outside the group, and not meeting the requirements of the classification, and for whom other salaries were fixed by other statutes, were substantially different, and that the requirement of proportionate grading required different salaries for such counties.

A statute providing that, after the census of 1930, all counties which had theretofore been within a certain population and property valuation class should pay their auditors $15,000 per annum, regardless of the population as shown by the census of 1930, or the assessed valuation for that and succeeding years, and that thereafter counties which theretofore had more or less population and assessed valuation, but which came within the class in 1930, should pay their auditors the same salary they had theretofore received when their population and assessed property valuation were different, and not within the limits of the classification, would be clearly unconstitutional, since the grading of salaries could not be considered as proportionate to the necessary services required of the various auditors. If the effect of the act of 1929 is to repeal or suspend the clauses which permit counties to automatically come within the provisions of the salary law, it is the same as though a new statute, such as has been described, had been enacted, and the salary law thus modified would not meet the requirements of the Constitution. The act of 1929 must therefore fall, and be treated as ineffective to accomplish such an unconstitutional purpose.

Judgment reversed, with instructions to overrule the demurrer, which challenges the complaint for insufficiency of facts, and for further proceedings not inconsistent with this opinion.

Tremain, J., dissents.

Treanor, J., concurs in dissent.

### DISSENTING OPINION.

TREMAIN, J., dissenting—I find myself unable to agree with the conclusion reached by the majority opinion.

In addition to the facts stated therein, it further appears that for each of the years 1930, 1931, and 1932,

in making up the budget for his office expenses, appellant asked for the allowance of a salary of only $10,000 per year; that before he filed this action, he filed with the board of commissioners of St. Joseph County his claim for the additional salary of $13,750, based upon the 1930 census; that the claim was allowed by the board of commissioners and was not appealed from, but he alleged in his complaint that the county council refused to make an appropriation of any funds with which to pay the allowance until the appellant obtained a judgment for the same, and for that reason he filed this action. He alleged in his complaint that Chapter 81 of the Acts of the General Assembly of the State of Indiana, approved March 11, 1929, known as the *"status quo"* law, was unconstitutional and void for the reason that it violated §§19, 21, 22, and 23 of Art. 4 of the Constitution of Indiana and had no application to the provisions of said §7839.

The appellees filed a motion to dismiss said action and addressed a demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action because (a) there was no allegation that an appropriation had been made; (b) it appeared that the salary of the appellant was governed by the *"status quo"* law of 1929 (Chap. 81, p. 275, Acts 1929), providing that a change in tax valuation or population, according to the United States census of 1930, should not *ipso facto* alter or affect the classification of any municipal corporation in the state until "the laws or any of the laws applicable to such municipal corporation shall have been specifically amended by the general assembly" (the 1929 act defined the term "municipal corporation" to include counties) ; (c) the appellant's salary could not, by virtue of §7864, Burns R. S. 1926, be increased during his term of office; (d) it appeared affirmatively that the appellant was estopped from

claiming the additional salary; (e) there was no showing that the estimate filed included the sums demanded so as to comply with §5881, Burns R. S. 1926 (requiring estimates of anticipated expenditures for the ensuing year to be made, filed, and published by the auditor).

Appellees' motion to dismiss was overruled and their demurrer was sustained to the complaint. The appellant refused to plead further; judgment was rendered against him and he perfected this appeal.

One question before this court is the constitutionality and effect of Chapter 81 of the Acts of 1929. As far as this question alone is concerned, if that chapter is invalid, or does not apply to §7839, the appellant should prevail, otherwise the judgment should be affirmed.

It affirmatively appears that prior to April 1, 1930, the salary of the appellant was governed by §7838, Burns R. S. 1926, and under the classification there designated, was fixed at $10,000 per annum. When the United States census of 1930 became effective upon that date, St. Joseph County was placed under the classification of §7839, Burns R. S. 1926, and the auditor's salary under that section was automatically increased to $15,-000 per annum, unless Chapter 81 of the Acts of 1929 had the effect to and did cause the salary to remain as fixed by the classification of said §7838.

While the appellant charged in his complaint that said Chapter 81 violated each of the §§19, 21, 22, and 23 of Article 4 of the State Constitution, he has waived the alleged error as to the violation of §§19 and 21 by failing to discuss the same under propositions, points, and authorities, and has confined himself to the question that Chapter 81 of the Acts of 1929 is in violation of said §§22 and 23 of Article 4, and contends that if Chapter 81 is held to apply to §7839, Burns R. S. 1926, its effect would be to render the latter statute unconstitutional, as violative of said §§22 and 23, since the result

would be to create, by retroactive operation upon the statute, a class of counties the salaries of whose auditors are not based upon "population or necessary services required," but are permanently fixed arbitrarily at a determinate amount regardless of population or services, thus resulting in local or special legislation.

Appellees insist that the application of said §7839 was suspended by Chapter 81, Acts 1929, and that the legislature had the power under §26, Article 1, of the State Constitution to suspend the application of said statute, and, therefore, the appellant was never entitled to the increased salary sued for herein. They cite as authority for their position the case of *Sallwasser* v. *City of Laporte* (1933), 205 Ind. 248, 251, 186 N. E. 297, which affirmed a decision of the lower court upholding Chapter 188, Acts 1909, which suspended the application of the 1910 United States census as to certain officers of cities affected by that census. Section 1 of that Act, amending a former Act concerning elective officers of certain cities, provided that cities of the fourth class having a population of more than 20,000 after the 1910 census, which would make them cities of the third class, shall continue to be cities of the fourth class until the expiration of the term of office of the officers elected on the first Tuesday after the first Monday in November, 1909.

While the constitutionality of the 1909 Act was not questioned, the effect of the decision was to uphold a statute which caused the salaries of officers of cities of the fourth class, under the old census, to remain the same, regardless of the 1910 census which would place such cities in the third class.

Chapter 81 of the Acts of 1929 does not purport to be an amendment to any specific existing statute. It is an independent act. It makes no reference to any particular statute or part of statute by its title or otherwise,

but refers to the law generally wherein any municipal corporation (which term by definition of the Act includes a county) is classified by population as shown by the United States census and assessed valuation of property, and provides that such municipal corporation (county) shall continue to operate under the laws applicable thereto at the time of the passage of the 1929 Act, and that such laws shall not be affected by the census of 1930, until such laws shall be amended by the general assembly. The effect of the 1929 Act was to *adopt* the fee and salary laws, then in existence, and continue them in force and in *"status quo"* unaffected by the United States census of 1930, or by any change in valuation of taxable property. Such general statutes are held to be valid. 25 R. C. L. 907, §160; *State ex rel.* v. *Leich* (1906), 166 Ind. 680, 78 N. E. 189, 9 Anno. Cases 302.

At page 682 of the Leich case it is said:

"When the adopting statute makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally which governs a particular subject, the reference in such a case includes not only the law in force at the date of the adopting act but also all subsequent laws upon the particular subject referred to." (Citing authorities.)

The 1929 Act did not make any change in the salary of the appellant. All salaries remained the same after the passage of said Act as they were before.

The General Assembly, at its regular session in 1929, possessed the power to alter the classification of municipalities and the fee and salary laws by two methods: (1) by a new act, and (2) by an amendment of the old act. *State ex rel.* v. *Bowman* (1927), 199 Ind. 436, 156 N. E. 394. Either the new act or the amendment is to be construed as if it were a part of the old act (that is the Act of 1921 in the instant case), from its beginning.

*Walsh, Treasurer, et al.* v. *State ex rel.* (1895), 142 Ind. 357, 41 N. E. 65; *State ex rel.* v. *Bowman, supra; Metsker* v. *Whitsell* (1914), 181 Ind. 126, 140, 103 N. E. 1078.

Therefore, the 1921 Act must be read to include the provisions of the 1929 Act. When so read, no doubt remains as to appellant's salary. It is $10,000 per annum.

The constitutional provisions which the appellant seeks to invoke are not applicable to such statutes. See *State ex rel.* v. *Greenwald* (1917), 186 Ind. 321, 116 N. E. 296. In that case it was held that the 1911 Act was complete in itself in providing for two additional judges in Lake County and that the rules as to amendments did not apply, though it had the effect of modifying and curtailing the existing law, and was valid under the sections of the constitution questioned in this appeal.

The 1929 Act retained §7839, Burns' R. S. 1926, and other similar statutes in *"status quo,"* and in operation the same as they "would have done if there had been no increase or decrease in the population or the assessed valuation of such municipal corporation, as shown by such census of population or assessment of property, and such municipal corporation shall so continue to operate until the laws or any of the laws applicable to such municipal corporation shall have been specifically amended by the general assembly." The effect of the Act was to repeal the automatic feature of such statutes. It is the same, in effect, as if a new act has been passed fixing the appellant's salary at $10,000 per annum, or as if the 1921 Act, when enacted, contained all the provisions of the 1929 Act.

The General Assembly of 1933, by the passage of Chapter 21 of that session, enacted new fee and salary laws for such municipal officers, and fixed the auditor's salary of St. Joseph County at $5,200 per annum. The legislature possesses the right to increase or diminish

salaries of public officers in cases where the same is not restricted by the constitution. The 1929 Act refers to "any law of this state" and does not profess to amend any statute. It refers to existing laws and modifies the same in the particulars mentioned therein. In reference to Article 4, §22, of the Constitution, it is for the legislature to determine what compensation is "in proportion to the population and the necessary services required," and can only be set aside by the court when there is a "gross departure and manifest abandonment and defiance of the constitutional requirements." This court would not be justified in saying that Act transgresses either §22 or §23 by a grant of "privileges or immunities." *Board, etc.* v. *Lindeman* (1905), 165 Ind. 186, 73 N. E. 912; *Harmon* v. *Board, etc.* (1899), 153 Ind. 68, 54 N. E. 105; *Board, etc.* v. *Chapman* (1898), 22 Ind. App. 60, 53 N. E. 187.

Since it is the duty of the legislature to determine what compensation is in proportion to the population and the necessary services required, the court will presume that the legislature adopted the Act in question with that standard in mind. That the Act placed the auditor of St. Joseph County on an equality with other county auditors.

The Act does not cease to be a general law, under the constitution, by reason of the fact that different salaries are designated in the several counties. To hold that there must be one law for the whole state, governing alike populous and sparsely inhabited counties, making the same provisions for the one as for the other would defeat the purpose of the constitution. A general law cannot provide adequately for all the necessities of all the governmental subdivisions of the state. Section 7838, Burns R. S. 1926, providing for a $10,000 per annum salary for county auditors in counties of a designated population, to which class St. Joseph County be-

longed prior to the Federal Census of 1930, the validity of which statute is not questioned by the appellant, would be held valid even though St. Joseph County were the only county in the state falling within that class. *City of Indianapolis* v. *Navin* (1897), 151 Ind. 139, 47 N. E. 525; *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, 204, 57 N. E. 920; *Evansville, etc., R. Co.* v. *City of Terre Haute* (1903), 161 Ind. 26, 67 N. E. 686; *State ex rel.* v. *Kolsen et al.* (1891), 130 Ind. 434, 29 N. E. 595; *State ex rel.* v. *Reitz, Auditor* (1878), 62 Ind. 159.

The 1929 Act is general in its application, not local or special, but is so worded as to leave the compensation of all public officers unchanged. To be specific, it was evidently the legislative judgment that the salary of the appellant was ample and should not be increased to $15,000 per annum in the event that the United States census of 1930 should show an increase in population of St. Joseph County. This court possesses no power to question the judgment of the legislature upon that subject.

It is not denied by the appellant that the legislature possesses complete power and control of municipal corporations, subject only to the restrictions of the state and federal constitutions. Neither does the appellant dispute the authority of the legislature to fix the fees and salaries of municipal officers. The defect or infirmity of which appellant complains, consists in the method employed by the legislature in providing that all municipalities shall remain in *"status quo"* and that the automatic feature of certain statutes shall be inoperative. The defect or invalidity of the Act of 1929, as claimed by the appellant, does not extend to the absence of legislative authority to enact a new law upon the subject or amend the old one, but the objection goes to the specific method employed, and the assertion that the Act does not apply to the instant case. Upon that ques-

tion no legal reason has been pointed out, and none occurs, why the Act does not apply to §7839 and is a part and parcel of it. The purpose of the legislature is plain. It was intended to prevent certain officials from receiving salaries disproportionate to those of other counties, considering the necessary services required.

Even in cases of doubt as to the constitutionality or applicability of an act, the doubt must be resolved in favor of the legislature. The purpose which the legislature had in mind is clear. It sought to relieve taxpayers of additional burdens of taxation by preventing possible increase in salaries of certain officials, which was likely to happen on account of the automatic feature of statutes classifying municipalities, and likely to be changed by the approaching Federal Census of 1930. The 1929 Act was a short method of accomplishing the result; it was remedial, correcting inconsistent salaries provided for, or made possible, by the 1919 and 1921 Acts, in order to make such salaries conform to and be upon an equality with the salaries of the auditors in other counties of the state. When the 1921 Act was passed by the legislature it affected Lake County only, as this court knows by taking judicial notice of the Federal Census. It must have occurred to the legislature, when it was in session in 1929, that if the 1921 Act was permitted to stand as written, it might have the effect of placing other counties in that classification and thereby cause the salaries to be disproportionate to salaries in other counties. At that time the salaries, for example, of the county auditors in Allen and Vanderburgh Counties were $6,500 each. The same legislature of 1921, which enacted Chapter 65 providing for a salary of $15,000 a year for auditors of counties of a certain classification, enacted another law, Chapter 274, which provided that in all counties having a population of 300,000 or more, according to the last preceding United States Census,

the salary of the county auditor shall be $7,500 per year. These references are sufficient to disclose the evident purpose of the legislature in enacting the 1929 Act in order to prevent some counties, St. Joseph County as one, from paying the auditor a salary out of proportion to that received by other auditors of the state. The Act was intended to be and is general in its application, and is entitled to favor and respect upon the part of the court, especially if the effect of it is in harmony with equity, justice and public policy. Such remedial action by the state, through its legislature, deserves to be considered in that light.

Some consideration may be given to the conduct of appellant. For the years of 1930, 1931, and 1932, he demanded only $10,000 per annum, which was paid. That appears to have been his construction of the law. He did not ask for the $15,000 until he had received $10,000 for each of those years. While this fact is not controlling, it is significant of what appellant thought he was entitled to at the time the services were rendered.

Aside from the question as to what salary the appellant thought he was entitled, the paramount object or purpose of all construction or interpretation, in respect to written laws, is to discover or ascertain the intention of the legislature. The intention of the 1929 Act is obvious. Guided by this rule, in the light of the circumstances as they existed at the time the law was enacted, it must be admitted that the purpose or object was to repeal the automatic feature of the statutes affected thereby, and to prevent increase in official salaries. The Act is expressive of the legislative determination of the amount the auditor of such county should receive for his services. It was enacted evidently for the purpose of safeguarding the public treasury and preventing profligacy of expenditure, by increasing salaries in certain

counties on account of possible increase of population as might be shown by the approaching 1930 Federal Census, until a new fee and salary law could be enacted. It was competent for the legislature to determine how far the county should become indebted to the appellant for services as county auditor and to enact a law declaring that his salary should remain the same as then fixed by statute. The 1929 Act was in full force and effect before the Federal Census was taken in 1930 and before the appellant entered upon his second term as auditor of St. Joseph County. At the time he entered upon his first term, the population unquestionably placed him in the $10,000 per year class. The sole effect of the 1929 Act was to leave him in that class.

The lower court properly sustained appellees' demurrer to appellant's complaint.

For the reasons given above, I think the judgment of the lower court should be affirmed.

TREANOR, J.—I concur in the result reached by Tremain, J., in his dissenting opinion. For substantially the reasons set out therein I think the judgment of the lower court should be affirmed.